[S. F. No. 16280. In Bank.—August 15, 1939.]

JESSE W. CARTER, Petitioner, v. COMMISSION ON QUALIFICATIONS OF JUDICIAL APPOINTMENTS et al., Respondents.

M. Mitchell Bourquin, Herbert Erskine, Edward F. Treadwell, Edward Hohfeld and Max Radin for Petitioner.

Albert A. Rosenshine, Randolph V. Whiting and John L. McNab, as *Amici Curiae,* on Behalf of Petitioner.

Earl Warren, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondents.

SHENK, Acting C. J.—In this proceeding in *mandamus* the petitioner seeks to compel the respondents, constituting the Commission on Qualifications of Judicial Appointments, to consider and act upon the matter of his qualifications for the office of Associate Justice of the Supreme Court of the State of California. The cause is submitted on the allegations of the petition and on a general demurrer interposed by the respondents as a return to the alternative writ.

The petitioner is and has been for some twenty-six years an attorney at law, admitted to practice before all the courts of this state. On January 17, 1939, he was duly elected state senator from the fifth senatorial district, comprising Shasta and Trinity Counties, for the term ending January 6, 1941.

On July 15, the Governor appointed the petitioner to the office of Associate Justice of the Supreme Court to fill the vacancy caused by the death of Mr. Justice Emmet Seawell on July 7. Under date of July 15, the Governor submitted the name of the petitioner to the Commission on Qualifications of Judicial Appointments for confirmation pursuant to section 26, article VI of the Constitution. Thereafter and under date of July 24, 1939, the commission informed the Governor in writing that it would "not consider the name of Senator Jesse W. Carter", and would "not undertake to investigate his qualifications because of the fact that he is a state senator, and, therefore, ineligible for the office of Associate Justice of the Supreme Court of the State of California by virtue of section 19, of Article IV of the Constitution".

In view of the refusal of the respondent commission to consider and pass upon his qualifications for the office to which he has been appointed, the petitioner seeks the writ, not to compel the commission to confirm his appointment, but to compel it to exercise the function and jurisdiction conferred upon it by section 26 of article VI of the Constitution.

■  At the outset it should be noted that the right to hold public office, either by election or appointment, is one of the valuable rights of citizenship. Mr. Mechem in his work on Public Officers, section 67, refers to the right to hold a public office under our political system as an ''implied attribute of citizenship''. The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office. (*People* v. *Dorsey*, 32 Cal. 296.) The petitioner relies on these well-established rules in support of his position.

On the other hand, the right to occupy a public office, once assumed, should not be left in a state of uncertainty. The undoubted attitude of the commission is that the question of the eligibility of the petitioner to assume and occupy the office to which he has been appointed is of such· grave import that it should be determined in an appropriate judicial proceeding. No suggestion has been made that the present proceeding is not appropriate to that end.

The commission urges the ineligibility of the petitioner because of the provisions of section 19 of article IV of the Constitution as amended in 1916, and section 26 of article VI, adopted in 1934. The history of those and other related provisions of our organic law, together with the practical and contemporaneous construction placed thereon, will be helpful in a solution of the problem presented.

The Constitution of 1849 contained the following provision (sec. 20, art. IV): ''No senator, or member of the assembly, shall, during the term for which he shall have been elected, be appointed to any civil office of profit under this state, which shall have been created, or the emoluments of which shall have been increased, during such term, except such offices as may be filled by election by the people.''

This section was readopted in the Constitution of 1879, but was designated as section 19 of the same article in the new Constitution. The language of this section without the exception was plain and certain and could admit of no interpretation. Its import was clear, to the effect that members of the legislature were ineligible for *appointment* to the prohibited offices. But the inclusion of the exception had the effect of injecting doubt and uncertainty as to the limitation thereby placed upon the operation of the language which preceded it. Did the exception mean that the lan-

guage preceding it should not apply to the appointment of a legislator who should run and be elected to another elective office during the term for which he had been elected a member of the senate or the assembly? Or did the exception mean that the prohibition should not apply to the appointment of a legislator to an elective office, that is, an office normally filled by election by the people? The question, otherwise stated, is whether a legislator may be appointed to an elective office and, if so, is the office of Associate Justice of the Supreme Court an elective office?

No judicial interpretation of the admittedly uncertain meaning of the constitutional provision has been available, but the question of its proper construction was from time to time officially submitted to the attorney-general of this state for his opinion. In 1911, he advised the Governor that a legislator was ineligible for appointment to the office of member of the railroad commission, an appointive position newly created by constitutional amendment having its origin in the legislative resolution adopted during his term. In 1913, the attorney-general advised the chief executive of the state that said section 19 did not render a member of the legislature ineligible for appointment to the office of a judge of the superior court. Under this advice, members of the legislature, in numerous instances, were appointed to elective positions such as members of boards of supervisors and judges of the superior court.

In 1916, section 19 of article IV was amended to read as follows: "No senator or member of assembly shall during the term for which he shall have been elected, hold or accept any office, trust or employment under this state, provided, that this provision shall not apply to any office filled by election by the people."

It will be observed that the section was amended in two particulars,—first, the positive prohibition was enlarged to include in the prohibited class all offices under this state, whereas prior to the amendment the prohibited class included only offices "created, or the emoluments of which have been increased, during" the term of the legislator; and, secondly, the language of the exception or proviso was changed from "except such offices as may be filled by election by the people", to "provided that this provision shall not apply to any office filled by election by the people."

In 1917, the attorney-general was called upon to advise the chief executive as to the effect of the amendment on the eligibility of members of the legislature for appointment to public office. He was of the opinion that the amended section enlarged the number of offices in the prohibited class, but that the continued prohibition applied only to appointive offices; that the change in phraseology in the exception or proviso resulted in no change in meaning; that both before and after the amendment the effect of the exception and proviso was to describe the kind or character of the offices removed from the prohibitory clause and not to describe the method by which the offices would be obtained. He called attention to the fact that prior to the amendment members of the legislature had been appointed superior court judges and had discharged their duties as such without any question having been raised as to their eligibility. He further stated: ''This was a practice presumably familiar to the framers of the new amendment, and if it had been the intention to prevent in the future this practice, it would seem that language clearly prohibiting the same would have been adopted, and such language not having been written into the provision it must be assumed that it was not intended to change the practice in this regard.''

It is true that in his opinions on the subject the attorney-general often expressed some doubt as to what judicial construction ultimately would be placed on the language of the exception in the original section and of the proviso in the amendment, but his advice down through the years, indeed for more than a quarter of a century, has been uniform to the effect that the exception in the one case and the proviso in the other had the effect of removing elective offices from the prohibited class. It should be stated, however, that, in 1938, he declined to advise with certainty that it was within the power of the Governor to appoint a member of the assembly to a vacant judgeship. His reluctance to advise more definitely apparently resulted from the belief that the then members of the Commission on Qualifications, or some of them, entertained and had expressed a doubt as to the eligibility of a member of the senate for appointment to the Supreme Court. But as late as June 7, 1939, he officially advised that a member of the legislature was not ineligible for appointment to the office of judge of the superior court. Since the adoption of section 26 of

article VI in 1934, the opinion of the legislative counsel of this state has been requested and has been given on the question of the eligibility of a member of the legislature for appointment to the office of judge of the superior court and also to the office of Associate Justice of the Supreme Court. After considerable research as reflected in his opinion the answer on each occasion was in favor of eligibility.

The contemporaneous interpretation thus placed on concededly vague and uncertain provisions of the Constitution is referred to not as of controlling significance, but to indicate that under familiar rules of construction such practical interpretation, extending over a long period of time, is entitled to great weight. (*Riley* v. *Thompson,* 193 Cal. 773 [227 Pac. 772].) The maxim of the civil law to that effect is incorporated in the Civil Code which declares in section 3535: "Contemporaneous exposition is in general the best." And the rule is applicable alike to the interpretation of the organic law as to a statute. (*Knowles* v. *Yates,* 31 Cal. 82, 83; 23 Cal. Jur., p. 776; 5 Cal. Jur., p. 603.)

The argument in favor of the amendment of 1916, sent to the electors of the state in the ballot pamphlet, contained the following pertinent statement: "The proposed law to render a member of the legislature ineligible to any office under the state, *other than an elective office,* during the term for which he shall have been elected, is therefore in the interest of good government and should be adopted." This argument may be resorted to as an aid in determining the intention of the framers of the measure and of the electorate when such aid is necessary. (*People* v. *Ottey,* 5 Cal. (2d) 714, 723 [56 Pac. (2d) 193].)

Commenting on the effect of the prohibitory clause of section 19, as amended in 1916, the District Court of Appeal said in *Chenoweth* v. *Chambers,* 33 Cal. App. 104, at page 106 [164 Pac. 428]: "The amended section is much more sweeping than its progenitor, for it applies to all offices, *other than elective offices. . . .* "

With reference to the same amendment it was said in *Satterwhite* v. *Garrison,* 34 Cal. App. 734, at p. 736 [168 Pac. 1053]: "Upon the merits of the whole case we are of the opinion that the intent and purpose of the framers in proposing, and of the people in adopting, this constitutional provision was the preclusion of members of the law-making branch of the state government from seeking or holding

any *appointive* office or employment in or under any department or subdivision of the general state government, by the seeking or holding of which his independent action as such member of the legislature might be in any wise influenced or affected." This language was quoted with approval in *Leymel* v. *Johnson,* 105 Cal. App. 694, 696 [288 Pac. 858].

The words "elective" and "appointive" in the foregoing quotations have been italicized for the purpose of emphasizing the fact that when the amendment of 1916 was proposed and when its language has been under observation by the courts, it has generally been considered, and apparently never contended otherwise, that appointment to appointive offices only was prohibited and that appointment to elective offices was not within the prohibition.

■ Independently of the argument to the voters and contemporaneous construction, the meaning of section 19 of article IV, both before and after the amendment of 1916, would appear to be in accordance with the interpretation contended for by the petitioner. If the section as originally adopted had any other meaning than that the exception removed elective offices from the operation of the prohibitory clause, the inclusion of the exception was meaningless and surplusage, for the section would then mean that legislators were ineligible for appointment except when they obtained their offices by election. There is, of course, a well-defined and fundamental difference between the acquisition of an office by appointment on the one hand, and by election on the other. An office is acquired by appointment in the exercise by the appointing authority of a delegated power. An office is acquired by election as the direct choice of all the members of the class or body from whom the choice can be made. Some meaning must be ascribed to the excepting clause and when we seek to ascertain it, the reasonable, if not the only logical conclusion is that the exception had the effect of describing the kind or character of the offices thereby removed from the operation of the prohibitory clause and not the method by which the offices were to be filled.

If by the 1916 amendment it was intended to prohibit entirely the appointment of legislators to public office, it would have been a simple matter to employ language to express that intent. Since no substantial change was made,

no clear intent to disqualify a legislator appears and, under the established rules of construction above referred to, the doubts must be resolved in favor of eligibility.

Either approach to a solution of the question leads to the conclusion that under section 19 of article IV of the Constitution, a legislator may be appointed to that kind of an office which is normally "filled by election by the people".
The office of Associate Justice of the Supreme Court is such an office unless the adoption of section 26 of article VI of the Constitution in 1934 had the effect of changing it from an elective to an appointive office. The answer on this phase of the question necessarily depends on the language used in section 26, together with the terms of related sections of the same article.

The pertinent provisions of section 26 are as follows: "Within thirty days before the sixteenth day of August next preceding the expiration of his term, any Justice of the Supreme Court, Justice of the District Court of Appeal . . . may file with the officer charged with the duty of certifying nominations for publication in the official ballot a declaration of candidacy for *election* to succeed himself. If he does not file such declaration the Governor must nominate a suitable person for the office before the sixteenth day of September, by filing such nomination with the officer charged with the said duty of certifying nominations.

"In either event, the name of such candidate shall be placed upon the ballot for the ensuing general *election* in November in substantially the following form:

| "For ..............................<br>(title of office)<br><br>Shall ................................<br>(name)<br><br>be *elected* to the office for the term expiring<br>January .............................?<br>(year) | YES<br><br>———<br><br>NO |
|---|---|

"No name shall be placed upon the ballot as a candidate for any of said judicial offices except that of a person so declaring or so nominated. If a majority of the *electors* voting upon such candidacy vote 'yes', such person shall be *elected* to said office. If a majority of those voting thereon vote 'no,' he shall not be *elected,* and may not thereafter be

appointed to fill any vacancy in that court, but may be nominated and *elected* thereto as hereinabove provided.

"Whenever a vacancy shall occur in any judicial office above named, by reason of the failure of a candidate to be *elected* or otherwise, the Governor shall appoint a suitable person to fill the vacancy. An incumbent of any such judicial office serving a term by appointment of the Governor shall hold office until the first Monday after the first day of January following the general *election* next after his appointment, or until the qualification of any nominee who may have been *elected* to said office prior to that time. . . .

"In addition to the methods of removal by the Legislature provided by sections 17 and 18 of Article IV and by section 10 of this article, the provisions of Article XXIII relative to the recall of *elective* public officers shall be applicable to justices and judges *elected* and appointed pursuant to the provisions of this section so far as the same relate to removal from office."

We have put the words "election", "elected" and "elective" in italics to indicate the uniformity with which the framers of the section referred to the office of Justice of the Supreme Court an an "elective" office or an office to be filled by "election". The new method of electing Justices of the Supreme Court and Justices of the District Courts of Appeal has brought about an important change in the method of their selection. But they have continued to be elective officers as distinguished from appointive officers of the state. The adoption of section 26 of article VI has not repealed by implication or otherwise the following provisions of section 3 of the same article: "The Chief Justice and the Associate Justices shall be elected by the qualified electors of the state at large at the general election, at the time and places at which state officers are elected. . . . " The method of filling vacancies by appointment by the Governor under the new procedure is not materially different from the old. The method of nomination has been materially changed, and the candidacies for the office have been restricted to persons who occupy the offices or to persons who have theretofore been nominated by the Governor. But the names of the candidates continue to be "placed on the ballot for the ensuing general election", and the electors vote on the question whether such candidate shall "be elected to the office".

The language of the new section 26 and of the older sections of the same article which were left undisturbed indicate without question that the Justices of the Supreme Court hold and continue to occupy their offices only at the will of the electorate. Resorting again to the argument sent to the electors we find that when section 26 was submitted to a vote of the people of the state, the argument in favor of adoption stated: "Under the proposed plan the ultimate control would remain in the hands of the people." The fact that the new method of election may make for more permanence in tenure, as was clearly intended by the framers of the new section and of the electorate in adopting it, affords no foundation for the conclusion that the electors have relinquished the right to say by their votes whether a candidate should or should not be retained in office. When the vote is cast on that question in favor of a candidate he is "elected" the same to all intents and purposes as under the old method. A vote for or against a proposition has been held to be an election thereon. (*State* v. *State Board of Canvassers*, 78 S. C. 461, 59 S. E. 145 [13 Ann. Cas. 1133, 14 L. R. A. (N. S.) 850].) The same effect should be accorded to the result of such a vote on the continuance in office of a candidate.

Let the peremptory writ issue as prayed.

Curtis, J., Edmonds, J., Pullen, J., *pro tem.*, and Spence, J., *pro tem.*, concurred.