[No. D014315. Fourth Dist., Div. One. Aug. 1, 1991.]

J. ANDREW LUBIN et al., Petitioners, v.
PETE WILSON, as Governor, etc., et al., Respondents;
MATTHEW K. FONG, Real Party in Interest.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

COUNSEL

Merrick Scott Rayle for Petitioners.

Daniel E. Lungren, Attorney General, N. Eugene Hill, Assistant Attorney General, Cathy A. Neff and Linda A. Cabatic, Deputy Attorneys General, Gray, Cary, Ames & Frye and F. P. Crowell for Respondents.

Nielsen, Merksamer, Hodgson, Parrinello & Mueller, John E. Mueller and James R. Parrinello as Amici Curiae on behalf of Respondents and Real Party in Interest.

E. Leslie Sorensen, Jr., for Real Party in Interest.

OPINION

HUFFMAN, J.—Voters J. Andrew Lubin and Edith D. Dowell join Paul B. Carpenter in seeking a writ of mandate[2] to compel Governor Pete Wilson, Secretary of State March Fong Eu and Controller Gray Davis (collectively respondents) to install Carpenter as a member of the State Board of Equalization, Fourth District (the Board). On April 18, 1991, the day after Carpenter filed this petition, Governor Wilson issued his commission appointing Matthew K. Fong[3] to fill Carpenter's seat on the Board. We issued an order to show cause on May 2, 1991, and calendared argument.[4]

Carpenter contends his conviction for racketeering, extortion and conspiracy (18 U.S.C. §§ 371, 1951, 1962(c)) does not disqualify him from the Board because the statutory scheme for disqualification or forfeiture of public office (1) is ambiguous, (2) violates his First Amendment right to hold office because his appeal is pending, and (3) as applied is an ex post facto law, and because (4) the "supervening" decision of *McCormick* v. *United States* (1991) 500 U.S. __ [114 L.Ed.2d 307, 111 S.Ct. 1807] voids his conviction. Regardless of the pendency of Carpenter's appeal, we conclude his conviction disqualified him from office under the plain meaning of article VII, section 8, subdivision (b) of the California Constitution and

---

[2]The petition was originally filed in the Supreme Court. By order dated April 23, 1991, the Supreme Court transferred the matter here.

[3]Matthew Fong is the son of March Fong Eu. Fong, as real party in interest, and the Republican Party, as amicus curiae, oppose the petition on identical grounds. For simplicity, we group the opposition as "respondents."

[4]Amended by order on May 9, 1991.

Government Code sections 1021, 1770 and 3000.[5] Accordingly, the petition is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Carpenter served as a state senator from 1980 to 1986. In 1986 voters elected him to the State Board of Equalization. On September 17, 1990, a federal jury found Carpenter guilty of racketeering, extortion and conspiracy for activities during his Senate term. Two months later the voters reelected him to the Board. On December 10, 1990, a federal judge sentenced Carpenter to prison for a term of 12 years. He was granted bail pending appeal.

Carpenter unsuccessfully attempted to execute and file his oath of office for the Board with Secretary Eu on January 6, 1991. In messages to the Assembly and Senate on January 17, Governor Wilson nominated Fong, declaring ". . . Carpenter, removed from office, term ending as prescribed by law." Fong took the oath of office on April 18, 1991.

### DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

■ Article VII, section 8, subdivision (b) of the California Constitution directs "Laws shall be made to exclude persons convicted of bribery, perjury, forgery, malfeasance in office, or other high crimes from office or serving on juries. . . ." Although the section is mandatory, it is not self-executing and requires legislation to give it effect. (*Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 420 [139 Cal.Rptr. 473].)

Section 1021 provides "A person is disqualified from holding any office upon conviction of designated crimes as specified in the Constitution and laws of the State." Similarly, section 3000 provides an officer forfeits office upon conviction.

Section 1770 enumerates events causing vacancy in office, including death, incapacity, resignation, and "conviction of a felony or of any offense involving a violation of his or her official duties." Subdivision (h) specifies

---

[5] All statutory references are to the Government Code unless otherwise specified.
*See footnote 1, *ante,* page 1422.

"An officer shall be deemed to have been convicted under this subdivision when trial court judgment is entered. For the purposes of this subdivision, 'trial court judgment' means a judgment by the trial court either sentencing the officer or otherwise upholding and implementing the plea, verdict, or finding."

Along with the definition of "trial court judgment," in 1988 the Legislature added sections 1770.1 and 1770.2, as "declaratory of [ ] the existing law." (Stats. 1988, ch. 283, p. 980.) Section 1770.1 provides disqualification from holding office upon conviction "is neither stayed by the initiation of an appeal from the conviction, nor set aside by the successful prosecuting of an appeal from the conviction . . . ." Similarly, section 1770.2 provides a person found guilty "shall not assume the office for which the person is otherwise qualified or shall be suspended immediately from the office the person then holds." Only where the trial court "sets aside or otherwise nullifies the plea or verdict before the trial court judgment is entered, the inability to assume office or the suspension from holding office shall be lifted . . . ." (§ 1770.2.)

## A

Carpenter argues section 1770, subdivision (h) is ambiguous because it leaves unclear whether the "felony" must involve a violation of "official duties," leaves nonfelonious conduct undefined and fails to specify if the misconduct must occur during the officer's term. It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) Here, the literal language of section 1770, subdivision (h) indicates *either of two* types of conviction trigger vacancy, specifically felony convictions and convictions for offenses involving a violation of official duties. Carpenter's felony conviction for racketeering, extortion and conspiracy falls squarely within the first type. The fact the charges stemmed from activities during Carpenter's senate term does not cloud the statute's applicability. We decline to interpret "violation of official duties" as a scenario not before us.

## B

Carpenter next contends his disqualification from the Board *while his appeal is pending* violates his First Amendment right to hold office. He claims the disqualification scheme does not survive strict scrutiny because it

is not the least restrictive method to exclude persons from public office under article VII, section 8, subdivision (b).

■ "The freedom of the individual to participate in political activity is a fundamental principle of a democratic society and is the premise upon which our form of government is based." (*Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 334 [38 Cal.Rptr. 625, 392 P.2d 385].) The First Amendment of the federal Constitution establishes the right of every citizen to engage in political expression and association. (See *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 269 [11 L.Ed.2d 686, 700, 84 S.Ct. 710, 95 A.L.R.2d 1412].) The fundamental right encompasses a citizen's right to vote, a candidate's capacity to gain a place on the ballot, and the constituent's chance to contribute to a chosen candidate. (Tribe, American Constitutional Law (2d ed. 1988) Rights of Political Participation, § 13, p. 1062.) The right to hold public office, either by election or appointment, is one of the valuable rights of citizenship. (*Johnson* v. *Hamilton* (1975) 15 Cal.3d 461, 468 [125 Cal.Rptr. 129, 541 P.2d 881]; *Carter* v. *Com. on Qualifications, etc.* (1939) 14 Cal.2d 179, 182 [93 P.2d 140].) Constitutional protection extends to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory. (*Wieman* v. *Updegraff* (1952) 344 U.S. 183, 191-192 [97 L.Ed. 216, 222-223, 73 S.Ct. 215].)

Where the curtailment of First Amendment rights is concerned, the state may prevail only if it can show that it has a "compelling" interest in limiting those rights. (*Sherbert* v. *Verner* (1963) 374 U.S. 398, 406-407 [10 L.Ed.2d 965, 971-972, 83 S.Ct. 1790].) Even if a compelling state purpose is present, the restriction must be drawn with narrow specificity. (*N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 433 [9 L.Ed.2d 405, 418, 83 S.Ct. 328].)

■ Here, Carpenter does not challenge the Legislature's authority to set qualifications for office and criteria for removal. Rather, Carpenter challenges his disqualification *before* his appeal is final. In other words, Carpenter would carve an exception to allow public official felons to retain their employment pending appellate exhaustion although others similarly situated receive no such benefit. As aptly explained in *State* v. *Twitchell* (1962) 59 Wn.2d 419 [367 P.2d 985], a public official convicted of a felony has no greater right than other convicted persons:

"Every other criminal defendant convicted at the trial court level is forced to bear hardships, even if his conviction is overturned on appeal. [Citations.] Adverse publicity, social stigma, and personal losses are commonplace—in fact, almost inevitable. Convicted criminal offenders may even lose their jobs—and probably will, if their employer chooses or feels forced by

circumstances to discharge them. The results can be and often are harsh and unfortunate, but this does not amount to, or at least has not yet been judicially recognized as, an infringement upon the right of appeal." (*Id.* at p. 991.)

Removal from public office is simply a consequence of a reasonable and sound public policy, and a condition imposed upon a public official in furtherance of the public interest in good government. Public officials are elected for the benefit of the community and can and should be removed, irrespective of detriment to the individuals involved if the interests of the community so require. (*State* v. *Twitchell, supra,* 367 P.2d at p. 992.)

The Legislature expressed its intent to preclude convicted individuals from holding public office from the moment of entry of "trial court judgment," regardless of a later successful appeal. The statutory scheme advances the compelling interest for honesty, integrity and confidence of the public in government, which is greater than the convicted person's interest in the office. As explained in *McKannay* v. *Horton* (1907) 151 Cal. 711 [91 P. 598], the public right takes precedent over an individual's claim to office:

". . . when by his fault or misfortune [a person] is no longer able to render the service the public interests demand that he shall give way to some one who can. An official who is declared insane is simply unfortunate, but he ceases to be an official; an innocent man who is unjustly convicted of a felony is doubly unfortunate, but the fact that he may by means of an appeal ultimately succeed in establishing his innocence does not entitle him in the mean time to hold on to a public office which he is no more capable of serving than if he were insane. The law allows an appeal from a conviction of felony because, so far from being against the public interest, it is promotive of the public interest that a person accused of crime should have every reasonable opportunity of vindicating his innocence. But if the person so convicted is the incumbent of a public office these considerations do not weigh in favor of retaining him in that position pending an appeal." (*McKannay* v. *Horton, supra,* 151 Cal. at p. 719.)

Moreover, the scheme avoids the real possibilities of offices remaining in limbo or held by incarcerated persons. The predicability and finality of removal or disqualification at "trial court judgment" promotes stability in government. Disqualification is automatic, a vacancy occurs, and the convicted person forfeits his or her office and the rights and powers incident to office. (*Helena Rubenstein Internat.* v. *Younger, supra,* 71 Cal.App.3d at p. 421.) ■ A person holds office subject to conditions imposed by the state and, where cause for removal is provided by law, the person is deemed to have accepted the office on condition he or she could be removed for that

cause and in the manner provided. (*Cline* v. *Superior Court* (1920) 184 Cal. 331, 336 [193 P. 929].)

### C

█ Carpenter asserts even if the statutory scheme for removal and disqualification from office at the moment of entry of "trial court judgment" is constitutional, the scheme should not apply to him because the portions defining "trial court judgment" were added in 1988, after his activities as a state senator and are thus ex post facto law. Respondents argue the scheme applies to Carpenter because the Legislature stated the amendments to be declaratory of existing law.

█ An ex post facto law is a criminal statute applying to crimes committed before its enactment, and substantially injuring the accused, by punishing an act innocent when done, or increasing the punishment, or taking away a defense. (1 Witkin & Epstein, Criminal Law (2d ed. 1988) Introduction to Crimes, § 16, p. 19) Ex post facto laws are prohibited by the federal Constitution (art. I, §§ 9, 10) and the California Constitution (art. I, § 9).

█ The question of existing law is of course the province of the courts. (*Marbury* v. *Madison* (1803) 5 U.S. 137 [2 L.Ed. 60].) Statutes declaring the manner in which a public office becomes vacant have long been held valid. (See *People* ex rel. *Mattison* v. *Nye* (1908) 9 Cal.App. 148, 150 [98 P. 241].) In *McKannay* v. *Horton, supra,* 151 Cal. at page 718, the Supreme Court reasoned the operation of judgment following a felony conviction was not suspended by appeal because the officer is ordinarily placed "under a physical restraint which prevents him from performing the duties of his office." In light of *McKannay* and in the absence of cases to the contrary, we conclude the 1988 amendments clarified rather than created new law.

Even were we to consider the amendments new law, Carpenter's disqualification from office is not an additional punishment for the felony conviction and is therefore not ex post facto. It is a "consequence which flows" from the judgment of a felony conviction. (*McKannay* v. *Horton, supra,* 151 Cal. at p. 720.) Disqualification is a civil disability. (*Helena Rubenstein Internat.* v. *Younger, supra,* 71 Cal.App.3d at p. 418.) Accordingly, Carpenter's appeal does not stay his removal from office.

### D

We are aware of the decision in *McCormick* v. *United States, supra,* 500 U.S. __, which may or may not affect Carpenter's judgment on appeal. Carpenter's personal tragedy would certainly be compounded were the

judgment set aside.[7] We emphasize the question of Carpenter's entitlement to office upon reversal is not before us and is not addressed here.

DISPOSITION

The petition is denied.

Work, Acting P. J., and Nares, J., concurred.

---

[7]Such a scenario is not without precedent. Lieutenant Governor of California Ed Reinecke was found guilty of perjury (18 U.S.C. § 1621) by a jury in the United States District Court for the District of Columbia. His conviction was reversed on appeal. (*United States* v. *Reinecke* (D.C. Cir. 1975) 524 F.2d 435, 440 [173 App.D.C. 274].)