[No. A098863. First Dist., Div. Five. Jan. 10, 2003.]

THE PEOPLE ex rel. FOUNDATION FOR TAXPAYER AND CONSUMER RIGHTS, Plaintiff and Respondent, v. HENRY DUQUE, Defendant and Appellant.

**COUNSEL**

Remcho, Johansen & Purcell, Joseph Remcho and Thomas A. Willis for Defendant and Appellant.

Harvey Rosenfield, Pamela M. Pressley; Bill Lockyer, Attorney General, and Anthony Davigo, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**JONES, P. J.**—The People of the State of California, through relator the Foundation for Taxpayer and Consumer Rights (FTCR) filed a quo warranto action against Commissioner Henry Duque of the Public Utilities Commission (PUC), contending Duque must be removed from office pursuant to Public Utilities Code section 303,[1] subdivision (a), because he formerly held stock in a corporation that was regulated by the PUC. The trial court agreed and ruled Duque had forfeited his office. Duque now appeals claiming the judgment must be reversed because (1) section 303, subdivision (a), is unconstitutional, and (2) the statute, by its terms, did not apply to his conduct. We agree with the second of these arguments and reverse the judgment.

---

[1]Unless otherwise indicated, all further section references will be to the Public Utilities Code.

I. Factual and Procedural Background

On April 3, 1995, former Governor Pete Wilson appointed Duque a commissioner on the PUC. The position is a constitutionally mandated office.[2] In December 1996, Governor Wilson reappointed Duque to a full six-year term. His appointment was confirmed by the state senate. Duque's term of office ended on January 1, 2003.

While Duque was a commissioner, his personal investment account was managed by his long-term stockbroker, Michael Golub. Golub made investment decisions for Duque pursuant to a power of attorney without seeking input from Duque. When Duque became a commissioner, he told Golub he could not own stock in companies that were regulated by the PUC.

On May 12, 1999, Golub purchased stock in Nextel Communications, Inc., a wireless communication carrier, and allocated 700 shares to Duque's account. At the time of the purchase, Duque believed that wireless carriers such as Nextel were regulated by the Federal Communications Commission (FCC), and not by the PUC. Golub had a similar understanding. Duque disclosed his ownership of the Nextel stock in his 1999 and 2000 statements of economic interests.

In fact, while states are precluded from regulating the rates charged by wireless carriers (see 47 U.S.C. § 332(c)(3)(A)), other aspects of Nextel's business were and are regulated by the PUC. Three months after Duque acquired his stock, Nextel and all other phone companies in California filed a joint petition seeking an allocation of phone numbers in the 310 area code. The PUC, with Duque voting in dissent, adopted an allocation plan. Duque voted against the interests of Nextel and the other petitioning parties.

In February 2000, the PUC noticed rulemaking proceedings to establish consumer protection rules applicable to telecommunication companies. The rules would apply to all communication companies, including Nextel.

In March 2000, the PUC approved an interconnection agreement between Pacific Bell and Nextel. The agreement was part of a larger consent item agenda that included several similar agreements. All the agreements were approved en masse.

---

[2]California Constitution, article XII, section 1, states: "The Public Utilities Commission consists of 5 members appointed by the Governor and approved by the Senate, a majority of the membership concurring, for staggered 6-year terms. . . . The Legislature may remove a member for incompetence, neglect of duty, or corruption, two thirds of the membership of each house concurring."

On August 16, 2000, Duque received a phone call from Todd Wallack, a reporter for the San Francisco Chronicle, who had reviewed Duque's statements of economic interests. Wallack questioned Duque's ownership of Nextel stock, asserting it was a regulated company whose stock Duque was not permitted to own. Duque contacted the general counsel of the PUC to ask him whether Nextel was regulated by the PUC. The general counsel did not call back.

Duque believed that Wallack sounded knowledgeable. He decided to sell his stock because there was, at a minimum, a perception of conflict. On August 18, 2000, Duque directed his stockbroker to sell his remaining Nextel stock. Duque earned almost $70,000 as the result of his ownership of the stock.

On October 4, 2000, respondent FTCR sought permission from the California Attorney General to file an action against Duque. The Attorney General granted permission in an opinion dated November 29, 2000. (See 83 Ops.Cal.Atty.Gen. 263 (2000).)

In January 2001, FTCR, acting in the name of the People of the State of California, filed a quo warranto action against Duque under Code of Civil Procedure section 803 et seq. FTCR contended that Duque had forfeited his office as a commissioner under section 303, subdivision (a), because he formerly owned a prohibited financial interest in Nextel.

In July 2001, FTCR filed a motion for summary judgment arguing it was entitled to prevail as a matter of law. The judge hearing the motion denied it, ruling that section 303, subdivision (a), "does not provide for the removal from office of a [c]ommissioner . . . for a voluntary acquisition of stock." However, the judge ruled Nextel was in fact subject to regulation by the PUC.

The case then proceeded to a one-day court trial. At the conclusion of the trial, the court issued a statement of decision ruling Duque had forfeited his office under section 303, subdivision (a), because he had voluntarily owned stock in a company that was regulated by the PUC. The court ruled specifically that Duque had *not* been dishonest and that he had *not* acted in bad faith. Instead, the court ruled that Duque had shown poor judgment because he had "not [done] everything, which can reasonably be expected of a public utility commissioner to do in order to avoid a conflict of interest." The court ordered Duque to pay a $5,000 fine, and ruled he must pay FTCR's attorney fees under Code of Civil Procedure section 1021.5.

This appeal followed. While the matter was being briefed, we granted Duque's petition for writ of supersedeas and stayed the court's judgment pending our resolution of the appeal.

## II. DISCUSSION[3]

██ Duque contends the judgment must be reversed because (1) section 303, subdivision (a) is unconstitutional, and (2) the section, by its terms, did not apply under the facts of this case. Since we do not reach constitutional issues unless absolutely required to do so (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225]), we turn to the second, and we believe, dispositive argument.

Section 303, subdivision (a), states: "A public utilities commissioner may not hold an official relation to nor have a financial interest in a person or corporation subject to regulation by the commission. If any commissioner acquires a financial interest in a corporation or person subject to regulation by the commission other than voluntarily, his or her office shall become vacant unless within a reasonable time he or she divests himself or herself of the interest."

Our interpretation of this language is guided by well-settled rules of construction. ██ In construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 [241 Cal.Rptr. 67, 743 P.2d 1323].) We must look to the statute's words and give them their usual and ordinary meaning. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) "The statute's plain meaning controls the court's interpretation unless its words are ambiguous." (*Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 860-861 [80 Cal.Rptr.2d 803, 968 P.2d 514].)

██ The language used in section 303, subdivision (a), is reasonably clear. The first sentence states that commissioners are precluded from owning an interest in any company that is subject to regulation by the PUC. Here, the trial court ruled, and the evidence fully supports the conclusion, that Duque held an interest in a corporation that was regulated by the PUC.

[3]While this appeal was being briefed, FTCR filed a request asking this court to take judicial notice of the legislative history of the statutes and constitutional sections that are at issue in this case. We deferred ruling on the request until the merits of the appeal. (See *People v. Preslie* (1977) 70 Cal.App.3d 486, 493-494 [138 Cal.Rptr. 828].) Having now considered FTCR's request, we grant it.

It is undisputed that Duque held Nextel stock. Nextel, as a wireless carrier, was and is subject to regulation by the PUC. Indeed, Duque himself participated in a decision in which the PUC asserted its right to regulate certain aspects of the wireless communication business. (See *In re Mobile Telephone Service and Wireless Communications* (Cal.P.U.C., 1996) 174 Pub.Utl.Rep.4th (West) 543.)

The second sentence of section 303, subdivision (a), then states that if a commissioner comes to possess an interest in a regulated company *"other than voluntarily"* (or in other words involuntarily) he or she must divest himself or herself of that interest "within a reasonable time." If the commissioner fails to do so, his or her office "shall become vacant." Here the trial court held, and the parties both agree, that Duque held his interest in Nextel *voluntarily.* Since the forfeiture language set forth in section 303, subdivision (a), applies only when a commissioner acquires an interest in a regulated company "other than voluntarily," the statute, by its terms, did not apply under the facts of this case.

This application of section 303, subdivision (a), highlights a critical gap in the language of the statute. While section 303, subdivision (a), states that commissioners may not possess an interest in a regulated company, and provides a remedy for the *involuntary* acquisition of such an interest, the statute does not describe what occurs when a commissioner *voluntarily* acquires an interest in a regulated company.[4] The pivotal issue presented here is whether we must fill that gap with an implied remedy: i.e., that a commissioner who voluntarily acquires an interest in a regulated company must forfeit his or her office. We decline to do so.

■ First, forfeiture provisions are disfavored because they encroach on the fundamental right to hold office. " '[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship . . . *The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. . . .'* " (*Helena Rubenstein Internat. v.*

---

[4]The statute's silence as to penalty for a voluntary acquisition is mirrored in a related constitutional provision. Article XII, section 7, of the California Constitution states: "A Public Utilities Commissioner may not hold an official relation to nor have a financial interest in a person or corporation subject to regulation by the commission." This language provides a standard of conduct applicable to public utilities commissioners, but does not provide a remedy for a violation of that standard. Article XII, section 7, also states: "A transportation company may not grant free passes or discounts to anyone holding an office in this state; and the acceptance of a pass or discount by a public officer, other than a Public Utilities Commissioner, shall work a forfeiture of that office." This portion of the section mandates forfeiture of office for certain types of conduct, but states clearly that the remedy does not apply to public utilities commissioners.

*Younger* (1977) 71 Cal.App.3d 406, 418 [139 Cal.Rptr. 473], italics added in *Helena Rubenstein*, quoting *People v. Washington* (1869) 36 Cal. 658, 662; see also *Carter v. Com. on Qualifications, etc.* (1939) 14 Cal.2d 179, 182 [93 P.2d 140].) Furthermore, the "law traditionally disfavors forfeitures and statutes imposing them are to be strictly construed." (*People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906 [98 Cal.Rptr. 57, 489 P.2d 1385]; see also 67 Ops.Cal.Atty.Gen. 459, 461 (1984).) ▮ We believe it is particularly appropriate to honor these limitations where, as here, the issue is whether a state constitutional officer has forfeited his office.

▮ Second, we are obligated to interpret the language in a statute in accordance with its plain meaning. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].) "We may not, under the guise of construction, rewrite [a] law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) ▮ Here, section 303, subdivision (a), describes what occurs when a commissioner involuntarily owns stock in a regulated company. The statute, by its terms, does not describe what occurs when a commissioner voluntarily owns stock in a company that is regulated. "[W]e must limit ourselves to interpreting the law as written and leave for the People and the Legislature the task of revising it as they deem wise." (*People v. Garcia* (1999) 21 Cal.4th 1, 15 [87 Cal.Rptr.2d 114, 980 P.2d 829].)

Our holding does not mean that commissioners may violate section 303, subdivision (a), with impunity. Article XII, section 1, of the California Constitution states that the Legislature may remove a commissioner from office "for incompetence, neglect of duty, or corruption . . . ." A commissioner who voluntarily owns stock in a regulated company arguably has neglected his statutory duty under section 303, subdivision (a), and thus would be subject to removal under article XII, section 1. Furthermore, Duque concedes that commissioners who violate the public trust remain subject to civil and criminal penalties under the Political Reform Act of 1974. (See Gov. Code, § 81000 et seq.) We hold only that a commissioner who violates section 303, subdivision (a), by voluntarily owning stock, does not, under the terms of that statute, forfeit his office.[5]

FTCR contends the interpretation of section 303, subdivision (a), we have adopted is absurd because it would permit forfeiture of office for the

---

[5]Having reached this conclusion, we need not decide the potentially more troubling issue of whether section 303, subdivision (a), is constitutional in light of article XII, section 1, of the California Constitution, which states: "The Legislature may remove a member [of the Public Utilities Commission] for incompetence, neglect of duty, or corruption, two thirds of the membership of each house concurring." Specifically, we need not decide whether the

involuntary acquisition of an interest in a regulated company, while providing no remedy for the more serious violation that occurs when a commissioner voluntarily acquires an interest in a regulated company. FTCR concedes this argument is premised on the assumption that a voluntary acquisition of an interest in a regulated company is, by its nature, a more serious offense. In our view, FTCR's premise is flawed. A commissioner can voluntarily but inadvertently acquire an interest in a regulated company by, for example, purchasing shares in an unregulated corporation which, unbeknownst to the commissioner, has recently acquired a regulated corporation. There is nothing particularly blameworthy about such an act and it should not necessarily trigger a more severe sanction.

██ Furthermore, while we must, if possible, avoid interpreting a statute in an absurd manner (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927]), when deciding what is "absurd" we are required to read the statute " ' "with reference to the entire scheme of law of which it is part so that the whole may be harmonized . . . ." ' " (*Ibid.*, quoting *People v. Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].) Section 303, subdivision (a), certainly has a limited scope. It mandates forfeiture of office for an involuntary acquisition of an interest in a regulated company, while stating no remedy for the conflict of interest that arises when a commissioner voluntarily obtains an interest in a regulated company. However, the omissions inherent in section 303, subdivision (a), are largely filled by the power to remove found in article XII, section 1, of the California Constitution, and by the civil and criminal penalties contained in the Political Reform Act of 1974. (See Gov. Code, § 81000 et seq.) When all the related provisions of law are considered together, our interpretation of section 303, subdivision (a), is not absurd.

FTCR also contends the trial court's interpretation of section 303, subdivision (a), is supported by two opinions issued by the California Attorney General. However, the issue in the first opinion, 80 Ops.Cal.Atty.Gen. 27 (1997) was whether the PUC is obligated to discharge an employee who marries an employee of a regulated company. That Attorney General concluded that "on its face, section 303 would prohibit continued employment by an employee of the Commission who marries an employee of a regulated utility." (*Id.* at p. 29.) The opinion does not involve a constitutional officer, does not involve stock ownership, and does not discuss the forfeiture clause

section's grant of the power to remove to the Legislature, bars the judiciary from determining whether removal is necessary or appropriate. (Cf. *In re McGee* (1951) 36 Cal.2d 592 [226 P.2d 1]; *California War Veterans for Justice v. Hayden* (1986) 176 Cal.App.3d 982 [222 Cal.Rptr. 512].)

that is pivotal here. Given these significant differences, we conclude the opinion is not persuasive. (Cf. *Andres v. Young Men's Christian Assn.* (1998) 64 Cal.App.4th 85, 90 [74 Cal.Rptr.2d 788].)

The second opinion, 83 Ops.Cal.Atty.Gen. 263 (2000), is the one in which the Attorney General authorized FTCR to file the present litigation. Given that the Attorney General has aligned himself with FTCR, citing the Attorney General's opinion as controlling is analogous to one party arguing that an amicus brief submitted in support of his position mandates how an appeal must be resolved. In any event, while opinions of the Attorney General are entitled to considerable weight, they are not binding. (*State of Cal. ex rel. State Lands Com. v. Superior Court* (1995) 11 Cal.4th 50, 71 [44 Cal.Rptr.2d 399, 900 P.2d 648].) Here, the Attorney General stated in his opinion that "[Duque's] office became vacant immediately upon his acquisition of the 700 shares of stock in Nextel on May 12, 1999." (83 Ops.Cal.Atty.Gen., *supra*, at p. 265.) In reaching that conclusion, the Attorney General did not discuss the language of the section 303, subdivision (a), in detail and he did not acknowledge that the statute only provides for a forfeiture when a commissioner obtains stock involuntarily. Again, we conclude the Attorney General's opinion is not persuasive.

FTCR next contends the trial court's ruling was correct under the rule that courts must, if possible, give meaning to all the language of a statute. (See, e.g., *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118 [81 Cal.Rptr.2d 471, 969 P.2d 564].) According to FTCR, interpreting section 303, subdivision (a), to mean that a voluntary acquisition of an interest does not result in a forfeiture would render the second sentence of the subdivision meaningless. This is simply not true. Under our interpretation, the first sentence of section 303, subdivision (a), sets forth the general rule that commissioners may not possess an interest in a company that is regulated by the PUC. The second sentence then provides a limited remedy for a violation of the general rule. If a commissioner obtains an interest involuntarily, he must divest himself of that interest in a reasonable time. If he fails to do so, his office is vacated. Under our interpretation, all language in the statute is given meaning.

Next, FTCR contends the trial court's ruling is supported by the maxim of statutory construction, *expressio unius est exclusio alterius,* meaning the "expression of one thing is the exclusion of another." (See *People v. Anzalone* (1999) 19 Cal.4th 1074, 1078 [81 Cal.Rptr.2d 315, 969 P.2d 160].) As we understand it, FTCR's theory is that the first sentence of section 303, subdivision (a), states the general rule that a commissioner who owns an

interest in a company that is regulated by the PUC forfeits his office. The second sentence then provides for a single exception to the general rule: a commissioner who obtains his interest involuntarily, need not forfeit his office if he disposes of that interest within a reasonable time. According to FTCR, interpreting the statute to mean that a commissioner who voluntarily obtains an interest in a regulated company faces no risk of automatic forfeiture of office would improperly add an additional exception that is not specified in the statute. We reject this argument because it is based on a false premise. Contrary to FTCR's argument, the first sentence of section 303, subdivision (a), does not state that a commissioner who owns an interest in a regulated company forfeits his office. It merely states that a commissioner may not own an interest in a regulated company. No remedy is provided. FTCR's argument, based on a mistaken interpretation of the statute, must fail.

FTCR also argues that its interpretation of section 303, subdivision (a), is supported by a constitutional consideration. Specifically, FTCR notes that the first sentence of subdivision (a) stating: "A public utilities commissioner may not hold an official relation to nor have a financial interest in a person or corporation subject to regulation by the commission" is identical to language contained in article XII, section 7, of the California Constitution. The language in article XII, section 7, in turn, is based on former article XII, section 22, which stated in part: "no person in the employ of or holding any official relation to any person, firm or corporation, which said person, firm or corporation is subject to regulation by said Public Utilities Commission and no person owning stock or bonds of any such corporation or who is in any manner pecuniarily interested therein, shall be appointed to *or hold* the office of Public Utilities Commissioner." (See Deering's Cal. Codes (1974 ed.) Const., art. XII, § 22, p. 199, italics added.) Since current article XII, section 7, was intended to restate former article XII, section 22, without "substantive change," (see art. XII, § 9) FTCR contends the language we have italicized in former article XII, section 22, must be interpreted to mean that a person cannot simultaneously hold the position of commissioner and possess stock in a regulated company. If a commissioner does so, his office becomes vacant. We reject this argument because it fails to distinguish between a duty and a remedy. Article XII, section 7, and former article XII, section 22, both describe a duty that is imposed on those who serve as commissioners on the PUC. A commissioner cannot hold an interest in a company that is regulated by the PUC. However, neither of those sections provides a remedy for a violation of that duty. It is simply beyond our purview, as an intermediate appellate court, to create or imply such a remedy where it is not statutorily or constitutionally compelled.

Finally, FTCR relies on language from *Lubin v. Wilson* (1991) 232 Cal.App.3d 1422, 1429-1430 [284 Cal.Rptr. 70], where the court said: "A person holds office subject to conditions imposed by the state and, where cause for removal is provided by law, the person is deemed to have accepted the office on condition he or she could be removed for that cause and in the manner provided. [Citation.]" FTCR contends that when Duque violated section 303, subdivision (a), by voluntarily owning stock, he failed to satisfy a "condition" of his position and thus forfeited his office.

We have no quarrel with the court's holding in *Lubin*; however, the case is distinguishable. The issue in *Lubin* was whether a member of the State Board of Equalization had forfeited his office when he was convicted of several felonies in federal court. The *Lubin* court ruled the member had forfeited his office, relying in part on Government Code section 1770, subdivision (h), which states that when person is "convict[ed] of a felony" his office becomes vacant. Since the statute at issue expressly mandated forfeiture under the circumstances presented, we agree the *Lubin* court reached the correct conclusion. Here, by contrast, the statute at issue contains a forfeiture provision, however, it clearly does not apply under the facts of this case. *Lubin* is not controlling.

III. Disposition

The judgment is reversed.

Stevens, J., and Simons, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 9, 2003.