BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
GERAWAN FARMING, INC., requests leave to sue in quo warranto upon the following question:
Has Daniel Zingale forfeited his office as a member of the California Agricultural Labor Relations Board because he has performed paid political consulting work during his term of office?
 CONCLUSION
Daniel Zingale's performance of paid political consulting work during his term of office as a member of the California Agricultural Labor Relations Board appears to violate Labor Code section 1150. Such a violation, however, does not result in vacating or forfeiture of this office by operation of law. For that reason, the question whether Daniel Zingale has forfeited his office as a member of the California Agricultural Labor Relations Board because he has performed paid political consulting work during his term of office does not present a substantial issue of fact or law requiring judicial resolution.
 ANALYSIS
On November 11, 2003, Daniel Zingale ("Defendant") was appointed by the Governor to fill an unexpired term on the California Agricultural Labor Relations Board (Lab. Code, §§ 1141-1151.6; "Board").[1] Defendant's appointment was confirmed by the Senate on January 26, 2004, and his term of office will expire on January 1, 2007. During the period from January 1, 2004 through September 30, 2004, Defendant performed political consulting work for the No on Proposition 67 campaign for which he was paid $50,000.[2]
Gerawan Farming, Inc. ("Relator") contends that (1) Defendant's political consulting work for the No on Proposition 67 campaign during 2004 constituted the performance of "any other business, vocation, or employment" in violation of the terms of section 1150 and (2) such statutory violation has caused Defendant to forfeit his office on the Board. Defendant contends that his paid consulting work did not constitute "any other business, vocation, or employment" for purposes of the statute, and that even if it did, such a violation would not cause a forfeiture of office. Because we agree with Defendant with respect to the second issue, that a violation of section 1150 does not effect a forfeiture of office, Relator's application for leave to sue is denied.
Code of Civil Procedure section 803 provides in part:
 "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state. . . ."
An action filed under the terms of Code of Civil Procedure section 803 is known as a "quo warranto" action; it is the proper remedy to test title to a public office (Visnich v. SacramentoCounty Bd. of Education (1974) 37 Cal.App.3d 684, 690; Hallinanv. Mellon (1963) 218 Cal.App.2d 342, 347-348; Klose v. SuperiorCourt (1950) 96 Cal.App.2d 913, 917-919; 81 Ops.Cal.Atty.Gen. 207, 208 (1998)), including that of an appointive member of a state board (see 82 Ops.Cal.Atty.Gen. 154, 155 (1999) [public member of Occupational Safety and Health Standards Board]).
In determining whether to grant leave to sue in quo warranto, we consider whether the application presents a substantial issue of fact or law appropriate for judicial resolution and, if so, whether granting the application would serve the overall public interest. (85 Ops.Cal.Atty.Gen. 101, 102 (2002); 83 Ops.Cal.Atty.Gen. 263, 263-264 (2000); 81 Ops.Cal.Atty.Gen.,supra, at p. 208.) "`In passing upon leave to sue in the name of the People of the State, it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of fact or question of law that the public interest requires to be determined by a court in an action in quo warranto.' [Citation.]" (84 Ops.Cal.Atty.Gen. 135, 140 (2001).)
In examining whether a substantial issue of fact or law has been presented by Relator, we look first to Defendant's duties and responsibilities as a Board member. The Board (§§ 1141-1151.6) administers the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975 (§§ 1140-1166.3; "Act"). The purpose of the Act is to provide collective bargaining rights for agricultural employees. (§ 1140.2.) Toward that end, the Board regulates employer-employee relations in the agriculture industry. (See Agricultural Labor Relations Bd. v. Laflin Laflin (1979) 89 Cal.App.3d 651, 656.)[3]
Looking next at the terms of section 1150, the focus of Relator's application for leave to sue, we find:
 "Each member of the board and the general counsel of the board shall be eligible for reappointment, and shall not engage in any other business, vocation, or employment."
In 80 Ops.Cal.Atty.Gen. 208, supra, we examined in detail the language of section 1150, stating in part:
 "The `outside' activities and employment of public officers and employees in California are subject to regulation under various conflict of interest laws (see Gov. Code, §§ 1090-1098; 8920-8926, 87100-87500) and authorized `incompatibility statements' issued by their individual employing agencies (see Gov. Code, §§ 1126, 19990; Long Beach Police Officers Assn. v. City of Long Beach (1988) 46 Cal.3d 736). While no California case has definitively ruled upon the constitutionality of a statute or ordinance containing an absolute prohibition upon outside employment, two cases have assumed the validity of the rules of a city fire department prohibiting other employment. (See Lake v. Civil Service Commission
(1975) 47 Cal.App.3d 224; Vick v. Patterson (1959) 157 Cal.App.2d 414.)
 "Cases from other jurisdictions have upheld prohibitions against outside employment in a variety of contexts. . . .
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "In our view, the prohibition of section 1150 is constitutional. . . . First, the statute ensures that Board members will devote their full time and energies to the duties of their office. Second, section 1150 constitutes a heightened conflict of interest proscription. It is reasonable to conclude that the Legislature intended for the members of the Board, who oversee and monitor agricultural labor relations, to be completely neutral and that the public perceives them as such. Banning all outside employment furthers that end.
 "Where a regulation is being tested under the due process requirement, the legislation will be presumed to be constitutional, and the courts will defer to the legislative policy if the law is not arbitrary or irrational. [Citations.] Even though the regulation may not `achieve perfection,' `the reasonableness of a policy is evaluated based upon whether it is designed to achieve its legitimate objectives.' [Citations.]
 "Section 1150, insofar as it restricts the outside employment of Board members, is rationally related to the purposes of ensuring that the members achieve optimum performance with respect to their duties and that they perform those duties free of any bias or lack of neutrality, actual or perceived." (Id. at pp. 211-213.)
Following our 1997 opinion, we have no difficulty in agreeing with Relator that Defendant's performance of consulting work during 2004, for which he was paid $50,000, presents a substantial question of fact and law whether he performed "any other business, vocation, or employment" within the meaning of section 1150. While each case must be considered in light of the particular circumstances, Defendant's paid consultant work may well come within the statutory ban as determined by a court in a quo warranto proceeding. (81 Ops.Cal.Atty.Gen., supra, at p. 210 [the ban is upon "all forms of outside employment"]; see Webster's 3d New Internat. Dict. (2002) pp. 302 ["business"], 490 ["consultant"], 743 ["employment"]; Emmolo v. Southern PacificCo. (1949) 91 Cal.App.2d 87, 92 ["any"]; 77 Ops.Cal.Atty.Gen. 185, 189 (1994) ["any"].)
However, resolution of Relator's first issue does not end our inquiry as to whether the filing of a quo warranto action would be appropriate in the circumstances presented. Removal from office by way of a quo warranto action may be effected only when it is established that the incumbent officeholder has no lawful entitlement to the office because the office has been vacated or forfeited by operation of law (see, e.g., Lubin v. Wilson
(1991) 232 Cal.App.3d 1422, 1429-1430 [conviction of a felony]) or the office was not lawfully occupied in the first place due to a failure in satisfying a necessary qualification (see, e.g., 86 Ops.Cal.Atty.Gen. 82, 83-85 (2003) [school district governing board member must be resident of district].)
Relator's second issue, that a violation of section 1150 constitutes a forfeiture of office, must therefore be considered as well. Our 1997 opinion did not address what consequences would flow from a violation of the terms of section 1150, and the statute itself does not provide a specific penalty.
In this situation, we may direct our attention to other relevant constitutional and statutory provisions. The Constitution provides: "Laws shall be made to exclude persons convicted of bribery, perjury, forgery, malfeasance in office, or other high crimes from office. . . ." (Cal. Const., art. VII, §8, subd. (b).) Although this constitutional provision is mandatory, it is not self-executing; rather, it requires legislation to give it effect. (Lubin v. Wilson, supra,
232 Cal.App.3d at p. 1426.)
One statute that has been enacted to carry out the directive of article VII of the Constitution is Government Code section 3000, which states: "An officer forfeits his office upon conviction of designated crimes as specified in the Constitution and laws of this State." (See also Gov. Code, § 1021 [disqualification from holding office].) Among the "designated crimes" specified in article VII of the Constitution is "malfeasance in office." (SeeLubin v. Wilson, supra, 232 Cal.App.3d at p. 1426; 80 Ops.Cal.Atty.Gen. 37, 39 (1997); 75 Ops.Cal.Atty.Gen. 64, 65 (1992).) Here, Defendant has not been convicted of any crime and thus does not come under the terms of section 3000.
The Legislature has enacted two other statutes that, when read together, merit our analysis. Government Code section 1222
states: "Every willful omission to perform any duty enjoined by law upon any public officer, or person holding any public trust or employment, where no special provision is made for the punishment of such delinquency, is punishable as a misdemeanor." (See Adler v. City Council (1960) 184 Cal.App.2d 763, 774-775; 76 Ops.Cal.Atty.Gen. 289, 292-293 (1993).) Government Code section 1770, subdivision (h), provides in turn:
 "An office becomes vacant upon the happening of any of the following events before the expiration of the term:
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(h) His or her conviction of a felony or of any offense involving a violation of his or her official duties. An officer shall be deemed to have been convicted under this subdivision when trial court judgment is entered. For the purposes of this subdivision, `trial court judgment' means a judgment by the trial court either sentencing the officer or otherwise upholding and implementing the plea, verdict, or finding.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Again, however, it is a criminal conviction that triggers a vacancy in office under the terms of Government Code sections1222 and 1770 (Lubin v. Wilson, supra, 232 Cal.App.3d at p. 1427; see 80 Ops.Cal.Atty.Gen., supra, at p. 40; 75 Ops.Cal.Atty.Gen., supra, at pp. 66-67), and Defendant has not been convicted of any offense. Hence, these statutes are inapplicable in the circumstances presented.
We find that the present situation is similar to that presented in People ex rel. Foundation for Taxpayer and Consumer Rights v.Duque (2003) 105 Cal.App.4th 259. There, the statute stated in part: "A public utilities commissioner may not . . . have a financial interest in a person or corporation subject to regulation by the commission. . . ." (Id. at p. 264.) Because the statute did not specify forfeiture of office as a penalty for voluntarily purchasing stock in a regulated corporation, the court concluded that a commissioner who purchased such stock could not be removed from office in a quo warranto action. (Id.
at pp. 265-266.) The court did note the availability of other disciplinary action that might be taken for violating the statute. (Id. at p. 266.)
The same is true here. While section 1150 does not specify forfeiture of office as a penalty for its violation, the Act authorizes the Governor to remove a Board member for neglect of duty or malfeasance in office. (§ 1141, subd. (b) ["Any member of the board may be removed by the Governor, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause"].) Defendant concedes that if the performance of his paid consulting work during 2004 constituted a violation of section 1150, he could be removed from office by the Governor under the terms of section 1141.
Our construction of the language of section 1150 is consistent with well-established principles affirming the right to hold public office. Serving in a public office is a fundamental aspect of citizenship and may be curtailed only when the law clearly so provides. (Carter v. Com. on Qualifications, etc. (1939)14 Cal.2d 179, 182; People ex rel. Foundation for Taxpayer andConsumer Rights v. Duque, supra, 105 Cal.App.4th at pp. 265-266;Lungren v. Davis (1991) 234 Cal.App.3d 806, 830-831; HelenaRubenstein Internat. v. Younger (1977) 71 Cal.App.3d 406, 418; 79 Ops.Cal.Atty.Gen. 243, 247-248 (1996).) Any ambiguity affecting the right to hold office is resolved in favor of finding eligibility to serve. (Carter v. Com. on Qualifications,etc., supra, 14 Cal.2d at p. 182; People ex rel. Foundation forTaxpayer and Consumer Rights v. Duque, supra, 105 Cal.App.4th at p. 266; Woo v. Superior Court (2000) 83 Cal.App.4th 967, 977;Helena Rubenstein Internat. v. Younger, supra, 71 Cal.App.3d at p. 418; 79 Ops.Cal.Atty.Gen., supra, at p. 247.) Application of these principles calls for us to construe the terms of section 1150 in the same manner as the court construed the statute inPeople ex rel. Foundation for Taxpayer and Consumer Rights v.Duque, supra, 105 Cal.App.4th 259.[4]
Accordingly, Defendant's performance of outside paid consulting work while serving as a Board member does not, in itself, work a forfeiture of his office or cause his office to become vacant. (See 81 Ops.Cal.Atty.Gen., supra, at p. 211 ["In the absence of a conviction or of an administrative order of removal, Defendant's office remains duly occupied, and an action in quo warranto will not lie"].) Accordingly, Defendant's continued presence in office does not make him a "person who usurps, intrudes into, or unlawfully holds or exercises any public office" within the meaning of section 803 of the Code of Civil Procedure.
Relator's application for leave to sue in quo warranto is therefore DENIED.
[1] References hereafter to the Labor Code are by section number only.
[2] Proposition 67 was rejected by the voters at the November 2, 2004 General Election. It would have imposed a telephone surcharge to fund emergency medical services.
[3] It is readily apparent that a member of the Board holds a "public office" for purposes of Code of Civil Procedure section803. (See People ex rel. Chapman v. Rapsey (1940)16 Cal.2d 636, 639-640; Coulter v. Pool (1921) 187 Cal. 181, 186-187; 80 Ops.Cal.Atty.Gen. 208, 209 (1997).)
[4] Of course, the Legislature may choose to amend section 1150 by adding a remedy for its violation. We note that the Legislature has not amended the statute since our 1997 opinion in which we interpreted the statute to cover "all forms of outside employment." (81 Ops.Cal.Atty.Gen., supra, at p. 210; seeSouthern Pacific Pipe Lines Inc. v. State Bd. of Equalization
(1993) 14 Cal.App.4th 42, 54; Aguimatang v. California StateLottery (1991) 234 Cal.App.3d 769, 791 [Legislature is presumed aware of Attorney General's construction of a statute and would have taken corrective action if it believed the legislative intent was misstated].)