[No. C044364. Third Dist. Oct. 4, 2004.]

ASSOCIATION FOR SENSIBLE DEVELOPMENT AT NORTHSTAR, INC., et al., Plaintiffs and Respondents, v.
PLACER COUNTY et al., Defendants and Appellants;
NORTHSTAR MOUNTAIN PROPERTIES, LLC, et al., Real Parties in Interest and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Under California Rules of Court, rules 976(b) and 976.1, only the Introduction, part I of the Discussion, and the Disposition are certified for publication.

COUNSEL

Law Offices of Donald B. Mooney and Donald B. Mooney for Plaintiffs and Respondents.

Anthony J. La Bouff, County Counsel, and Valerie D. Flood, Deputy County Counsel, for Defendants and Appellants.

Remy, Thomas, Moose & Manley, Whitman F. Manley and William C. Burke for Real Parties in Interest and Appellants.

OPINION

**ROBIE, J.—**

## INTRODUCTION

On December 4, 2001, Placer County adopted a mitigated negative declaration for the construction of a three-building apartment complex at the Northstar Ski Resort. The developers of this project, collectively Northstar,[1] designed this complex to provide affordable housing for the employees of the ski resort and other businesses in the adjoining areas. The Association for Sensible Development at Northstar, Inc. (ASDAN), challenged the adoption of the mitigated negative declaration. The trial court set aside the adoption of the mitigated negative declaration because Placer County failed to meet the requirements of the California Environmental Quality Act. (Pub. Resources Code,[2] § 21000 et seq. (CEQA).)

---

[1] The parties we refer to as Northstar include Northstar Mountain Properties, LLC; Booth Creek Ski Holdings, Inc.; East West Partners-Tahoe, Inc.; Trimont Land Company; and Corum Real Estate Group.

[2] All further statutory references are to the Public Resources Code unless otherwise indicated.

Northstar contends the trial court erred in failing to dismiss ASDAN's CEQA petition because ASDAN failed to properly and timely request a hearing on its petition under section 21167.4. In the unpublished portion of this opinion, we discuss Northstar's remaining contentions. First, the trial court erred in concluding the description of the project contained in the mitigated negative declaration was improper because it omitted major project elements. Northstar also argues that the trial court erred in concluding a fair argument existed that the project would have significant environmental impacts in the areas of land use, growth, water and drainage, traffic, and cumulative impacts. We shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISCUSSION

### I

*Request for Hearing—Section 21167.4*

Northstar contends the trial court erred when it refused to dismiss this case because ASDAN failed to take the appropriate steps to request a hearing within 90 days of the filing of its petition under section 21167.4. We disagree.

ASDAN filed its petition in the trial court on January 7, 2002. Within 90 days, ASDAN filed a document entitled "Notice of Request and Request for Hearing," requesting a hearing under section 21167.4. On April 5, 2002, which is also within 90 days of the filing of the petition, ASDAN filed a second document entitled "Notice of Scheduling Hearing," noticing a hearing date of May 6, 2002, to schedule the matter for a hearing.

Northstar filed a motion to dismiss the action based on the contention ASDAN failed to properly request a hearing date within 90 days under section 21167.4.

In opposing Northstar's motion, counsel for ASDAN submitted a declaration stating that he had been advised by the trial court and its staff that the trial court "prefers to have the parties come before the Court in a case

---

*See footnote, *ante,* page 1289.

management conference setting to discuss the status of the case and set a briefing schedule." Further, counsel averred "[t]he Court has requested that a request for hearing be submitted and that the Court's staff would then notify the parties as to when they should appear for a case management conference." Counsel also informed the court that in several prior CEQA cases, the court had informed him that the hearing date on the merits of CEQA petitions was routinely set at the case management/status conference.

The trial court denied Northstar's motion because ASDAN "timely filed a request for hearing under [section] 21167.4, subd. (a) in the format required by Placer County Superior Court."

We start our analysis of this issue with section 21167.4 which provides: "(a) In any action or proceeding alleging noncompliance with this division, the petitioner shall request a hearing within 90 days from the date of filing the petition or shall be subject to dismissal on the court's own motion or on the motion of any party interested in the action or proceeding. [¶] (b) The petitioner shall serve a notice of the request for a hearing on all parties at the time that the petitioner files the request for a hearing. [¶] (c) Upon the filing of a request by the petitioner for a hearing and upon application by any party, the court shall establish a briefing schedule and a hearing date. In the absence of good cause, briefing shall be completed within 90 days from the date that the request for a hearing is filed, and the hearing, to the extent feasible, shall be held within 30 days thereafter. Good cause may include, but shall not be limited to, the conduct of discovery, determination of the completeness of the record of proceedings, the complexity of the issues, and the length of the record of proceedings and the timeliness of its production. The parties may stipulate to a briefing schedule or hearing date that differs from the schedule set forth in this subdivision if the stipulation is approved by the court."

The seminal case on the requirements of section 21167.4 is *McCormick v. Board of Supervisors* (1988) 198 Cal.App.3d 352 [243 Cal.Rptr. 617] (*McCormick*). In *McCormick,* the challenger to a project filed a document entitled "Request for Hearing" and did nothing more to secure a hearing in the trial court on its petition challenging a zoning action. (*Id.* at pp. 355, 356.) The court noted that the policy behind section 21167.4 is to ensure that mandate proceedings challenging environmental approvals are conducted expeditiously and squarely places the burden on the challenger to tender its claim for resolution at an early point in the proceedings or lose it altogether. (*McCormick,* at p. 358.) The *McCormick* court held, "section 21167.4 requires the petitioner to take affirmative steps sufficient to place the matter on

the court's docket for a hearing, either by filing and serving a notice of hearing or utilizing some other method authorized by the local rules of the court in which the matter is pending. A mere advisory pleading stating that the petitioner requests a hearing is inadequate." (*Ibid.*)

We conclude the trial court correctly denied Northstar's motion. ASDAN's filing of the original document "Request for Hearing" complied with the letter of section 21167.4. We conclude *McCormick*'s requirement that the petitioner do something more than this is no longer good law in light of the 1994 amendment to section 21167.4.

At the time *McCormick* was decided in 1988, section 21167.4 read, in its entirety, "In a writ of mandate proceeding alleging noncompliance with this division, the petitioner shall request a hearing within 90 days of filing the petition or otherwise be subject to dismissal on the court's own motion or on the motion of any party interested therein." (Stats. 1980, ch. 131, § 3, p. 304.) In the former statute, there was no mechanism for any party other than the petitioner to demand that the matter be set for hearing. Thus, the *McCormick* court's construction of the statute's language "request a hearing" to mean that the petitioner must take affirmative steps to put a CEQA challenge on the court's trial calendar for an early resolution was sensible based on the statute's prior language and the policy reason behind it.

In 1994, the Legislature amended section 21167.4 to add subdivision (c), which provides, in part, that "[u]pon the filing of a request by the petitioner for a hearing and upon application by any party, the court shall establish a briefing schedule and a hearing date." (§ 21167.4, subd. (c); Stats. 1994, ch. 1294, § 21, pp. 8325–8326.)[3] While the amendment did not alter the language of subdivision (a), we can only conclude that the addition of this language in section (c) altered the meaning of subdivision (a).

Under the current version of the statute, after the petitioner files a request for a hearing, "any party" may file an "*application*" for a hearing date at which point in time the court *must* set the hearing. Thus, the petitioner controls the timing of the filing of the "request [for] a hearing" but must file that request within 90 days of the filing of the petition. Immediately after filing that document, the petitioner must serve it on all parties. Now, however, either the petitioner *or* the respondent can force the trial court to set a hearing

---

[3] We grant Northstar's request that we take judicial notice of the legislative history concerning this amendment. (Evid. Code, § 452, subd. (c); *People ex rel. Foundation for Taypayer & Consumer Rights v. Duque* (2003) 105 Cal.App.4th 259, 264, fn. 3 [129 Cal.Rptr.2d 298].)

by filing an "application" as soon as the petitioner completes this first step. Either party may move the petition to a hearing on the merits, swiftly satisfying the legislative intent that these proceedings be conducted expeditiously. (*McCormick, supra,* 198 Cal.App.3d at p. 358.)

■ In making this determination that subdivision (a) of section 21167.4 requires only the filing of a request, we are mindful that the Legislature is presumed to have approved the judicial construction of a statute when it amends the statute without changing the language of the provision that has been construed. (*People v. Allen* (1993) 20 Cal.App.4th 846, 852 [25 Cal.Rptr.2d 26].) We also are mindful, however, that it is our duty to construe statutes in a manner that gives meaning to the statute as a whole and to each word contained in that statute. (See *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659 [25 Cal.Rptr.2d 109, 863 P.2d 179] [" 'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.' "].) We must "give effect to the usual, ordinary import of the words used in the statute, giving significance to each word, phrase and sentence in context with the purpose of the statute and avoiding a construction which would make some words surplusage." (*In re Parker* (1998) 60 Cal.App.4th 1453, 1464 [71 Cal.Rptr.2d 167].) Our construction of section 21167.4 gives meaning to the language of subdivision (c) and furthers the policy goals behind the statute. If *McCormick* were still good law and the "request a hearing" language of subdivision (a) required the petitioner to do something more than file a request for a hearing, the words "and upon application by any party," and the request that the "court shall establish a briefing schedule and a hearing date" in subdivision (c), would be rendered surplusage—a result we must avoid if possible. We conclude a petitioner satisfies the requirement of the statute by filing a request for hearing. ASDAN met that burden here.

## II

### *CEQA Evaluation**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1289.

## DISPOSITION

The judgment is affirmed. ASDAN shall recover its costs on appeal. (Cal. Rules of Court, rule 27(a).)

Davis, Acting P. J., and Nicholson, J., concurred.