Filed 1/5/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CAPE CONCORD HOMEOWNERS ASSOCIATION, | D069620 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00055798-CU-WM-NC) |
| CITY OF ESCONDIDO, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Jacqueline M. Stern, Judge. Affirmed.

Peters & Freedman and Zachary R. Smith for Plaintiff and Appellant.

Jeffrey R. Epp, City Attorney, Michael R. McGuinness, Assistant City Attorney, and Allegra D. Frost, Deputy City Attorney, for Defendant and Respondent.

California law requires a local agency to refund sewer service fees paid for which no sewer services were provided. (Gov. Code,[1] § 53082, subd. (b).) Where a person paid such fees and is still residing at the same location, the local agency is required to

---

[1] All statutory references are to the Government Code unless otherwise specified.

refund such fees "in their entirety" upon determining "the premises is not connected to the sewer system."  (§ 53082, subd. (c).)

Here, from 1980 through 2012, the City of Escondido (City) supplied water through a single water meter to a residential condominium homeowners association and starting in 2006 billed for sewer services per gallon of water that flowed through that meter.  The association used some of that water for its swimming pool and related bathroom facilities, which are connected to the City's sewer system.  However, according to the association, upwards of 97 percent of the water was used for irrigating landscape common areas.  In 2012 the City determined those landscape areas are not connected to the City's sewer system and at the association's request installed a separate, second water meter to supply water exclusively to that part of the property.

The primary issue in this case is whether, for the period of time from 2006 to before the second water meter was installed, the homeowners association is entitled to a refund under section 53082 of sewer service fees paid for the water used for irrigating the common area landscaping, for which no sewer services were provided.

We conclude section 53082 does not apply because liability for wrongfully collecting sewer service fees under this statute does not depend on a property owner's subjective or particular use of City-supplied water through a single water meter, but rather on whether the premises serviced by that meter are or are not connected to the sewer system.  Here, during the period the property was supplied by a single water meter, the premises was, in fact, connected to the City's sewer system.  Accordingly, we affirm the trial court's order denying the association's petition for a writ of mandate.

2

FACTUAL AND PROCEDURAL BACKGROUND

A.  *City Sewer Service Fees, in General*

The City operates water treatment facilities and a distribution system to deliver water.  The City's wastewater division is responsible for safely treating and disposing of wastewater and maintains more than 360 miles of sewer lines.

The City's municipal code provides that the owner or occupant of premises connected to the City's sewer system "shall pay a sewer service charge."  (Escondido Mun. Code, § 22-57.)[2]  The amount is based on: (1) the quantity of water used, and (2) the customer's water use classification as determined by the City.  Sewer service fees are used to acquire, construct, maintain, and operate the City's sewage facilities.  (Escondido Mun. Code, § 22-67.)

Assuming no run-off, water used only for irrigation goes into the ground, not into the sewer system.  Escondido does not assess a sewer service fee for premises it classifies as "[I]rrigation[-I]nstitutional" because such premises are not connected to the sewer system.

B.  *Cape Concord Homeowners Association Sewer Service Fees*

Cape Concord Homeowners Association (Cape Concord), a nonprofit mutual benefit corporation, is the residential owners association for a common interest development known as Cape Concord in the City.  The development consists of 218

---

[2]     Escondido Municipal Code section 22-57 provides:  "In addition to any and all other fees, charges or assessments proved by the city, the owner or occupant of any premises connected with the sewage system of the city shall pay a sewer service charge as required by this article."

3

residential units and common areas, and is divided into two phases, called Turnbridge and Nantucket.

The Cape Concord common areas consist of landscaping and a swimming pool and pool house at each phase. Cape Concord uses water to irrigate the common area landscape and supply water for the swimming pools and pool houses, which contain showers, sinks, and toilets. An "overwhelmingly vast majority" of the water used by Cape Concord is for irrigation.

Before 2012 there was one water meter supplying Cape Concord water at Turnbridge and another meter at Nantucket. From the development's inception in 1980 through 2006, the City classified Cape Concord "[C]ommercial at [S]ingle [F]amily." Under this classification, Cape Concord paid a flat rate for sewer service, ranging from about $14 to $32 each month.

In 2006 the City changed Cape Concord's classification to "[C]ommercial." As a result, the City began charging Cape Concord for sewer services based on the quantity of water used, as measured by each of the two meters, regardless of whether the water was used for irrigation or the pools/pool houses.

C. *The Meter Split*

In 2012 Cape Concord was having financial difficulties and was particularly concerned about its high water bills. The July 2012 water bill, for example, exceeded $10,000.

At Cape Concord's request, the City inspected the property. The purpose of the meeting was to determine whether the water meters at Cape Concord could be split to

4

avoid the sewer service charge on its irrigation use.  The City determined that the existing water line at each phase could be split into two meters—one exclusively servicing the swimming pool and pool house (which used the sewer system), and the other supplying water exclusively for irrigating common area landscaping (which did not use the sewer system).  By splitting the meters in this manner, Cape Concord would not be assessed a sewer fee on water used exclusively for irrigation.

In October and November 2012, the City added a second water meter at Turnbridge and also at Nantucket.  As a result, one meter serviced water exclusively for irrigating common area landscaping, and the other for the swimming pools and pool houses.

The City reclassified the meters providing irrigation as "[I]rrigation[-I]nstitutional," a classification exempt from a sewer service fee.  After the meter split, the City did not charge Cape Concord sewer service fees for water from the irrigation-only meters.

In deposition testimony, Mary Unland, whom the City designated as its most qualified person regarding the meter split, explained that irrigation-only water meters service premises that are not connected to the City's sewer system:

> "Q:  And why doesn't the irrigation classification[] get the sewer service charge?
>
> "A:  Irrigation meters that are irrigation only, and that's how we classify them, is that they're irrigation only, are not connected to the City sewer system.
>
> "Q:  Okay.

5

"A: Therefore, we don't charge them sewer.

"Q: So the irrigation lines service property that is not connected to the sewer system, is that right?

"A: That is correct. [¶] . . .

"Q: The idea is the irrigation meter services water to property that's not connected to the sewer, correct?

"A: Yes.

"Q: Therefore, no sewer service or wastewater fee would apply, correct?

"A: Correct.

"Q: Okay. And so this meter here, 8112285, does in fact have an irrigation classification, correct?[3]

"A: Now it does, irrigation only, yes. [¶] . . .

"Q: In order to get that classification, somebody at the City must have determined that that water meter was servicing water to property for purposes that were not connected to the sewer system, right?

"A: Right. [¶] . . .

"Q: And you don't know who that was, correct?

"A: Correct.

"Q: But you know that determination had to be made at the time that that meter was classified as irrigation, correct?

"A: Yes."

---

3     The City designated one of the Cape Concord irrigation-only meters No. 8112285.

The meter split dramatically reduced Cape Concord's water bill. Cape Concord contends that after the meter split, 96.8 percent of the water used at Turnbridge was for irrigation only. Based on this, Cape Concord estimated it paid $55,586.29 in sewer service fees at Turnbridge for which City provided no sewer services.

Cape Concord contends that after the meter split, 98.9 percent of the water used at Nantucket was for irrigation. Assuming this same 98.9 percent ratio, Cape Concord estimated it paid $119,589.79 in sewer service fees at Nantucket for which the City provided no sewer services.

D. *Section 53082*

Section 53082 provides in part:

"(a) By July 1, 1991, local agencies shall refund any sewer service fees collected for which no services were delivered.

"(b) Any sewer service fees collected by a local agency from any person for which no service has been provided shall be refunded in accordance with subdivisions (c) and (d).

"(c) In cases where a person paid fees as described in subdivision (a) and is still residing at the same location, it shall be the responsibility of the local agency, upon determination that the premises is not connected to the sewer system, to return fees in their entirety, regardless of the amount of time the fees were wrongly collected. For the purposes of this section, if the exact amount of the charges is not readily available, the amount of the refund may be calculated by averaging the rates paid by payers in the same classification during the time period in which the fees were collected.

"(d) In cases where a person paid fees as described in subdivision (a) but is not still residing at the same location, the payer of the fees may make a claim for a refund to the agency collecting the fees.

"(e) No statute of limitations shall apply to claims for fees paid before January 1, 1992. For fees paid on or after January 1, 1992, claims shall be filed within 180 days of the date of payment."

E. *Petition for Writ of Mandate*

In July 2013 Cape Concord sued the City in a pleading entitled petition for writ of mandate or, in the alternative, complaint for: (1) money pursuant to Government Code section 53082, (2) money had and received, (3) accounting, and (4) declaratory relief. The writ petition alleged that under section 53082, subdivisions (a), (b), and (c), the City had a "clear, present and ministerial duty" to refund sewer service fees Cape Concord paid for which no sewer service was provided.

In January 2015 Cape Concord filed a motion for a writ of mandate.[4] Cape Concord argued that by splitting the water meters into irrigation and nonirrigation classifications, the City determined the irrigation premises were not connected to the sewer system, and the City had a ministerial obligation under section 53082, subdivision (c), "to return [sewer] fees in their entirety, regardless of the amount of time the fees were wrongly collected." (§ 53082, subd. (c).) Cape Concord asserted it paid the City $175,176.08 in sewer service fees for water used exclusively for irrigation, which did not utilize the sewer system.

Opposing the motion, the City asserted that section 53082 only applies where "no [sewer] services were delivered," as provided in section 53082, subdivision (a). Because

---

[4] The Superior Court of San Diego County, Local Rules, rule 2.4.8(A) provides: "In seeking mandamus . . . relief, it is not necessary to obtain an alternative writ . . . . The noticed motion procedure should be used whenever possible."

8

Cape Concord conceded that some portion (from 1.1 to 3.2 percent) of its total water use was for the swimming pools and pool houses, the City argued section 53082 simply did not apply.

Next, the City argued that even if section 53082 applied, Cape Concord could only recover sewer service payments made within 180 days of its "claim" for refund, as provided in section 53082, subdivision (e).

In reply, Cape Concord asserted that by splitting the meters the City had recognized the irrigation premises were not connected to the sewer system, thus triggering section 53082, subdivision (c). Cape Concord argued the 180-day limitation period in subdivision (e) only applies to "claims" made by a nonresident under section 53082, subdivision (d). Because Cape Concord sought recovery as a *resident* under section 53082, subdivision (c), it asserted the City was obligated to "return fees in their entirety, regardless of the amount of time the fees were wrongly collected," as subdivision (c) states.

After conducting a hearing, the court denied the motion.[5] In its written order, the court made these findings:

> "[I]n the summer of 2012 the City determined that [Cape Concord] could avoid paying sewer service charges for water used for irrigation purposes by splitting its two water meters. . . . After the split, [Cape Concord] was not charged a sewer service fee for the [two] meters which were used solely to irrigate [Cape Concord's] landscape common areas. . . . [T]hese two meters were not charged a sewer service fee because it was determined that [Cape Concord's]

---

5  The hearing was unreported and the parties have not provided any substitute for a reporter's transcript.

9

landscape common area was not connected to the City's sewer system."

Next, the court determined section 53082, subdivision (c) was "triggered . . . and required the City to refund . . . sewer service fees paid by [Cape Concord] on the premises that were not connected to the sewer system."

However, citing *Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 961 (*Utility Audit*), the court held the 180-day limitation period in section 53082, subdivision (e) applied, limiting Cape Concord's recovery to sewer service fees paid within 180 days of the filing of its "claim" on February 19, 2013. Because the causes of action alleged in Cape Concord's alternative complaint had a longer limitation period and therefore would afford Cape Concord a greater recovery, the court denied the petition on the grounds Cape Concord had an adequate remedy at law.

Later, to facilitate this appeal, the court dismissed Cape Concord's complaint at Cape Concord's request. Cape Concord timely appealed from the order denying its petition for writ of mandate.

DISCUSSION

I. *PRINCIPLES GOVERNING WRITS OF MANDATE AND<br>THE STANDARD OF REVIEW*

Code of Civil Procedure section 1085, subdivision (a) provides a writ of mandate "may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." "Generally, a writ of ordinary mandate will lie when (1) there is no plain, speedy and adequate alternative remedy, (2) the public official

10

has a legal and usually ministerial duty to perform and (3) the petitioner has a clear and beneficial right to performance." (*Menefield v. Foreman* (2014) 231 Cal.App.4th 211, 216-217 (*Menefield*).) "A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment." (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 593.)

"'Thus, "[w]here a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion."'" (*Ellena v. Department of Ins.* (2014) 230 Cal.App.4th 198, 205.) "Mandamus has long been recognized as the appropriate means by which to challenge a government official's refusal to implement a duly enacted legislative measure." (*Morris v. Harper* (2001) 94 Cal.App.4th 52, 58.)

"When reviewing a trial court's judgment on a petition for ordinary mandate, we apply the substantial evidence test to the trial court's findings of fact and exercise our independent judgment on legal issues, such as the interpretation of statutory . . . requirements." (*Menefield, supra,* 231 Cal.App.4th at p. 217; *Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840 ["We independently review the construction of statutes."].)

II. *PROPERTY SUPPLIED BY A SINGLE WATER METER IS A SINGLE "PREMISES"*
*AND, IF CONNECTED TO THE SEWER SYSTEM, SECTION 53082 DOES NOT APPLY*

A. *Principles of Statutory Interpretation*

In determining whether section 53082 applies in this case and, if so, whether the 180-day limitation period in subdivision (e) applies to refunds sought under subdivision (c), "our primary task is to give effect to the Legislature's intended purpose in enacting the law." (*People v. Hubbard* (2016) 63 Cal.4th 378, 386 (*Hubbard*).) "We begin with the statute's text, assigning the relevant terms their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme." (*Ibid.*) "'"The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.'"" (*Association for Sensible Development at Northstar, Inc. v. Placer County* (2004) 122 Cal.App.4th 1289, 1295.) "Where the statutory text admits of more than one reasonable interpretation, we may consider various extrinsic aids—including the legislative history—to the extent they are helpful in illuminating that purpose." (*Hubbard,* at p. 386.)

B. *Section 53082 Does Not Apply Because Sewer Service Was Provided at the Premises*

Section 53082 applies only where an agency collects a sewer use fee "for which no service has been provided" with respect to "premises . . . not connected to the sewer system." (§ 53082, subds. (a), (b) & (c).) The City contends section 53082 does not apply in this case because Cape Concord concedes sewer service was provided "at the

12

subject property"—albeit for what Cape Concord estimates as only 1.1 to 3.2 percent of its total water use.

Section 53082 does not define "premises," and the parties do not cite, and our own independent research has not found, any definition of "premises" in the Government Code in general. However, as Cape Concord points out, the City municipal code pertaining to "Wastewaters, Stormwaters, and Related Matters" defines "premises" as "a parcel of real property *or portion thereof* . . . which is determined by the [C]ity to be a single unit for purposes of receiving, using and paying for wastewater disposal service." (Italics added.) (Escondido Mun. Code, § 22-1.)

Applying this definition to" premises" in section 53082, subdivision (c), Cape Concord contends that by splitting the single water meter at each phase into irrigation and nonirrigation meters, the City necessarily determined the landscape common area was "a portion" of the property—i.e., a "premises"—that was a single unit for purposes of receiving sewer services. Therefore, Cape Concord asserts, section 53082, subdivision (c) applies.

"'Premises' has various legal meanings depending on the context and the situation." (*County of San Mateo v. Consolidated Farms, Inc.* (1959) 169 Cal.App.2d 735, 738.) We disagree with Cape Concord's assertion that its municipal code definition of "premises" necessarily applies to section 53082, a state statute. Cape Concord cites nothing indicating the Legislature had the City municipal code in mind when it enacted section 53082, nor that the City contemplated section 53082 when adopting the definition of "premises" in its local ordinance.

13

Rather than looking to any particular public agency's definition of "premises" to give meaning to that word in section 53082, we are instead required to define that word in light of the object that statute attempts to achieve, the evil to be remedied by the statute, the legislative history, public policy, and the statutory scheme of which the statute is a part. (See *In re Luke W.* (2001) 88 Cal.App.4th 650, 655 [principles for statutory interpretation].)

Section 53082 was enacted in response to billing practices of the City of Los Angeles, which beginning in 1972 assessed sewer service charges against property owners who did not use the City's sewer system at all, but instead relied wholly on septic tanks or Los Angeles County services. (*Utility Audit, supra,* 112 Cal.App.4th at p. 953.) The problem received the Legislature's attention, which enacted section 53082 to force municipalities to refund sewer service fees in situations where no sewer services were delivered.

Significantly, as enacted, the problem to be remedied involved an agency's charge for sewer service that not only it did not provide, but it *could not* provide. For property exclusively on a septic system, it does not matter how the property owner uses the city-supplied water—none of it will go through a sewer system that is not even there. Thus, section 53082 imposes what is essentially strict liability on a public agency that charges sewer service fees under such circumstances because presumably, the agency knows or should know what properties it supplies with water are serviced by its sewer system and which are not.

14

However, from the inception of Cape Concord in 1980 until the meter split in 2012, the situation in Cape Concord's case is completely different. During that period, each of the two phases of Cape Concord were supplied water through a *single* water meter. Cape Concord alone decided how it would use that water. Some of it went to the swimming pools and related restroom facilities—which are connected to the City's sewer system. Cape Concord chose to use other water for irrigation that went into the ground and not into the sewer system.

There is no evidence in this record indicating the City ever knew, or should have known, how Cape Concord was using its water during this period. In Cape Concord's case, it is the user's choice, not communicated to the City, to use the bulk of the water supply that could have gone into the sewer system for irrigation that forms the basis of its refund claim.

Thus, Cape Concord seeks to use the strict liability provided in section 53082 to a set of facts significantly different from the harm the Legislature sought to remedy by that statute. Liability under section 53082 was intended to be triggered not by the property owner or occupier's subjective or particular use of water—something the agency cannot control, much less know of in the ordinary course—but rather on whether the objective features of the property itself are such that preclude any of the supplied water from entering the sewer system.

Accordingly, "premises" in section 53082, subdivision (c) must be defined with respect to the existence of sewer service for the portion of property supplied by a single water meter, not the user's choice of how to use the water supplied. Where, as here, a

15

single water meter supplies water to property, that entire property is the "premises" within the meaning of section 53082. Section 53082, subdivision (c) imposes liability only where "the premises is not connected to the sewer system." Thus, from 1980 to 2012 (before the meter split) in this case, the City is not obligated to refund any sewer service fees for water supplied from that meter because the premises *were* connected to the sewer system. Conversely, *after* Cape Concord and the City split the water supply into two meters at each phase, each of these two portions of the property is a "premises" within the meaning of section 53082. If one of those premises is not connected to the sewer system, then the City is prohibited from charging sewer service fees for water delivered through that particular meter. (§ 53082, subd. (c).)

C. *The Court Reached the Correct Result*

The superior court denied Cape Concord's writ petition on the grounds section 53082 applied, but limited any recovery to sewer service fees charged within 180-days of the date Cape Concord filed a claim. Generally, "we will affirm a judgment or order if it is correct on any theory of law applicable to the case, even if it is right for the wrong reasons." (*Estate of Beard* (1999) 71 Cal.App.4th 753, 777.) Because in this case the court reached the correct result—denial of Cape Concord's writ petition—albeit for an incorrect reason, we affirm.

16

DISPOSITION

The order denying the petition for writ of mandate is affirmed.  The City of

Escondido is entitled to costs on appeal.


NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.

17