Filed 3/23/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SENIOR AND DISABIILITY ACTION et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>SHIRLEY WEBER, as Secretary of State, etc.,<br><br>    Defendant and Respondent. | A159540<br><br>(City and County of San Francisco<br>Super. Ct. No. CPF-18-516265) |

Senior and Disability Action, Alice Chiu, and the American Civil Liberties Union of Northern California (ACLU) (collectively Appellants) sought a writ of mandate to compel the Secretary of State of California (the Secretary) to designate certain state offices as voter registration agencies under the federal National Voter Registration Act (NVRA).  The trial court determined the Secretary had no mandatory duty to designate two of the offices for which Appellants sought designation, "Local Educational Agency (LEA) Special Education Offices" and Area Agencies on Aging, as voter registration agencies.  We affirm.

**BACKGROUND**

**A.    The NVRA**

In 1993, Congress enacted the NVRA to "increase the number of eligible citizens who register to vote in elections for Federal Office." (52 U.S.C. § 20501(b)(1).)  The statute requires states to provide three

1

different systems for registering voters in federal elections: (1) a system connected to applying for a driver's license; (2) a system by mail; and (3) a system "by application in person" at various state offices. (52 USC § 20503(a)(1)-(3); *Young v. Fordice* (1997) 520 U.S. 273, 275.) This appeal concerns the third system—voter registration services at state offices.

The NVRA requires each state to "designate agencies for the registration of voters in elections for Federal office." (52 U.S.C. § 20506(a)(1).) There are two types of agencies a state is required to designate: (1) "all offices in the State that provide public assistance" (52 U.S.C. § 20506(a)(2)(A) (Section 20506(a)(2)(A)) and (2) "all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities." (52 U.S.C. § 20506(a)(2)(B) (Section 20506(a)(2)(B)).)

In addition, the NVRA directs each state to "designate other offices within the State as voter registration agencies." (52 U.S.C. § 20506(a)(3)(A).) Such designated agencies "may include— ¶ (i) State or local government offices such as public libraries, public schools, offices of city and county clerks (including marriage license bureaus), fishing and hunting license bureaus, government revenue offices, unemployment compensation offices, and offices not described in [Section 20506(a)(2)(B)] that provide services to persons with disabilities; and ¶ (ii) Federal and nongovernmental offices, with the agreement of such offices." (52 U.S.C. § 20506(a)(3)(B) (Section 20506(a)(3)(B)).)

Each designated voter registration agency must offer certain voter registration services, including distribution of voter registration application forms, assistance to applicants in completing these forms, unless such assistance is refused, and acceptance of completed voter registration

2

application forms for transmittal to the proper election officials. (52 U.S.C. § 20506(a)(4)(A).) If a mandatory voter registration agency under Section 20506(a)(2)(B) provides services to a person with a disability at that person's home, voter registration services shall also be extended at the person's home. (52 U.S.C. § 20506(a)(4)(B).) Further, any designated voter registration agency in California must assign an employee to be responsible for the agency's compliance, ensure that employees involved in voter registration services are trained once a year on voter registration laws, and coordinate with county election officials on registration-related matters. (Elec. Code, § 2406.)

California's Secretary of State is tasked with coordinating the state's responsibilities under the NVRA. (52 U.S.C. § 20509; Elec. Code, § 2402, subd. (a).) Consequently, the Secretary is responsible for ensuring that all offices that qualify as mandatory voter registration agencies are so designated and for designating any other state offices as discretionary voter registration agencies.

## B. This Dispute

In 2015, ACLU, later joined by Disability Rights California (DRC) (representing Senior and Disability Action and Alice Chiu), initiated discussions with the Secretary regarding the designation of voter registration agencies in the state. Additional state offices were designated voter registration agencies following those efforts.

In June 2018, ACLU and DRC renewed their request to the Secretary to make all mandatory voter registration agency designations required under the NVRA. They identified 10 programs subject to mandatory designation and also requested mandatory designations extend to private entities under contract with a designated agency. In response, the Secretary committed to

3

designating three additional offices as voter registration agencies: programs for students with disabilities in state community colleges, certain county welfare departments, and the Office of Services to the Blind in the Department of Social Services. The Secretary did not agree to the remaining requests.

In July 2018, Appellants filed a petition for writ of mandate and complaint for declaratory and injunctive relief seeking to compel the Secretary to make additional mandatory designations. The petition alleged three entities—state offices that administer General Assistance or General Relief programs, California Student Aid Commission Financial Aid Programs, and California Department of Education Nutrition Programs—must be designated under the mandatory designation provision for offices providing "public assistance" in Section 20506(a)(2). The petition also alleged two offices—LEA special education offices and "Area Agencies on Aging and other offices under contract to provide services or benefits on behalf of the California Department of Aging"—must be designated under the mandatory designation provision for offices providing services to persons with disabilities under Section 20506(a)(3)(B). Lastly, the petition sought the designation of all private entities under contract to provide services or assistance on behalf of existing voter registration agencies.

In December 2018, Appellants moved for a peremptory writ of mandate pursuant to two causes of action they asserted under Code of Civil Procedure section 1085. They requested the court direct the Secretary to make the six mandatory voter registration agency designations set forth in their petition.

Following a hearing, the trial court issued an order granting in part and denying in part the motion. The court found the Secretary had a mandatory duty to designate as voter registration agencies state offices that

4

administer General Assistance or General Relief programs and California Student Aid Commission Financial Aid Programs, as well as all private entities under contract to provide services on behalf of a voter registration agency. For these entities, the court issued a peremptory writ of mandate directing the Secretary's designation. As to the offices that administer the California Department of Education Nutrition Programs, LEA special education offices, and Area Agencies on Aging, the court found no mandatory duty existed and denied the motion.

Weeks later, the Secretary confirmed he had made the designations ordered by the court. The court entered judgment in October 2019, and this appeal followed.

## DISCUSSION

### A. Principles Governing Writs of Mandate and Standard of Review

Code of Civil Procedure section 1085, subdivision (a), provides: "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." (Code Civ. Proc., § 1085, subd. (a).) " 'Generally, a writ of ordinary mandate will lie when (1) there is no plain, speedy and adequate alternative remedy, (2) the public official has a legal and usually ministerial duty to perform and (3) the petitioner has a clear and beneficial right to performance.' [Citation.] 'A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment.' [Citation.] [¶] ' "Thus, [w]here a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion." ' " [Citation.] 'Mandamus has long

5

been recognized as the appropriate means by which to challenge a government official's refusal to implement a duly enacted legislative measure.' " (*Cape Concord Homeowners Assn. v. City of Escondido* (2017) 7 Cal.App.5th 180, 189–190 (*Cape Concord*).)

" 'When reviewing a trial court's judgment on a petition for ordinary mandate, we apply the substantial evidence test to the trial court's findings of fact and exercise our independent judgment on legal issues, such as the interpretation of statutory . . . requirements.' " (*Cape Concord*, *supra*, 7 Cal.App.5th at pp. 189–190.)

## B.      Mandatory and Discretionary Designations under the NVRA

The parties do not dispute that Section 20506(a)(2)(B) imposes upon the Secretary a mandatory duty to designate as voter registration agencies "all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities." (52 U.S.C. § 20506(a)(2)(B).) These offices are often referred to as "mandatory" voter registration agencies. (See, e.g., *Disabled in Action of Metro. New York v. Hammons* (2nd Cir. 2000) 202 F.3d 110, 114 (*Hammons*); *United States v. New York* (N.D.N.Y. 2010) 700 F.Supp.2d 186, 201–02 (*New York*).)

Both parties also recognize that Section 20506(a)(3)(B) of the NVRA gives the Secretary a choice to designate other offices in the state as voter registration agencies. This provision, which provides that agencies "*may* include" state or local government offices such as public libraries and public schools and "federal and nongovernmental offices, with the agreement of such offices" (52 U.S.C. § 20506(a)(3)(B)(i)-(ii), emphasis added), leaves the choice of which offices will be designated to the state. (See *People v. Chubbuck* (2019) 43 Cal.App.5th 1, 7 ["[i]n its plain meaning, the term 'may' references permissive conduct, or conduct which is optionally exercised"].) The NVRA

merely "encourage[s]" "all nongovernmental entities" to cooperate with the states in agency designations but does not compel it. (52 U.S.C. § 20506(b).) These offices are often referred to as "discretionary" voter registration agencies. (See, e.g., *Hammons*, *supra*, 202 F.3d at p. 114; *New York*, *supra*, 700 F.Supp.2d at p. 201.)

The parties disagree, however, on how these sections apply to two particular state entities: LEA special education offices and Area Agencies on Aging. Whether the NRVA imposes a ministerial duty on the Secretary to designate these offices, for which mandamus will lie, or confers discretion with the Secretary to choose whether to designate them, depends on the nature of each office. As we explain, Appellants have not demonstrated they are entitled to mandamus for either.

### 1. LEA Special Education Offices

Appellants argue the trial court incorrectly concluded that the Secretary had no obligation to designate LEA special education offices as mandatory voter registration agencies. We disagree.

As an initial matter, there is nothing in the record that substantiates Appellants' view of what constitutes an LEA special education office. Appellants contend "LEA Special Education Offices provide special education services to students receiving public elementary and secondary education," so therefore they are offices in the state that provide state-funded programs primarily engaged in providing services to persons with disabilities. No statute or regulation cited by Appellants, however, recognizes an office or entity by such a name, nor is there any information in the record identifying such an office or its functions. The record does not explain whether a LEA special education office exists at public school sites, at school district offices, or some combination of the two. If they do exist at public school sites, the

7

record does not identify which ones, and whether they are elementary or secondary schools. Nor does the record explain where or how such offices provide services to disabled students. Absent critical information in the record about what these entities are and where and how they operate, we cannot conclude LEA special education offices are the types of state offices that fall under the NVRA's mandatory designation.

Even if we construe Appellants' designation request to be for "local educational agencies" or "LEAs," which are defined under the law, we are still not persuaded the Secretary had a ministerial duty to designate them. Education Code section 56026.3, which both parties cite, states " '[l]ocal educational agency' means a school district, a county office of education, a nonprofit charter school participating as a member of a special education local plan area, or a special education local plan area." (Educ. Code, § 56026.3.) By definition, LEAs include certain nonprofit charter schools, which are a type of public school. (See *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 205 [describing charter schools as "public schools funded with public money but run by private individuals or entities rather than traditional public school districts"]; *California Charter Schools Assn. v. Los Angeles Unified School Dist.* (2015) 60 Cal.4th 1221, 1228 [observing "[c]harter schools are public schools ' "free from most state laws pertaining uniquely to school districts" ' "].) Appellants do not dispute these characterizations. Since the NVRA makes designation of public schools as voter registration agencies discretionary (52 U.S.C. § 20506(a)(3)(B); *Hammons*, *supra*, 202 F.3d at p. 120, fn. 10 [noting "Congress, by explicitly including public schools in the discretionary category, appears to have exempted them from mandatory designation"]), we cannot

conclude the Secretary had an obligation to categorically designate LEAs as mandatory voter registration agencies.

Appellants contend that equating all LEAs with public schools directly contradicts the term's very definition. Even recognizing that a LEA can be a "school district" or "county office of education" (see Educ. Code, § 56023.3) does not compel the designation Appellants seek. For a mandatory designation, a school district or county office of education must be an "office[] in the State that provide[s] State-funded programs primarily engaged in providing services to persons with disabilities." (52 U.S.C. § 20506(a)(2)(B).) We see nothing in the record demonstrating Appellants made such a showing with respect to any school district, or county office of education. We also recognize that "local educational agency" is defined to include a "special education local plan area," but as with LEA special education offices, there is nothing in the record that explains what these are that would allow us to determine if such plan areas qualify under the mandatory designation. As a result, we cannot conclude the Secretary had a mandatory duty to designate LEAs as voter registration agencies.

Appellants argue that "to the extent that there is any overlap between the mandatory offices defined in [Section 20506(a)(2)(B)] and the examples of discretionary offices later called out in [Section 20506(a)(3)(B)], States are nonetheless required to designate those offices as Voter Registration Agencies. Otherwise, Congress's clear mandate requiring that *all* offices that constitute . . . disability Voter Registration Agencies . . . be so designated, would be rendered meaningless."

Even if we assume Appellants demonstrated LEAs provided programs primarily engaged in serving disabled persons, we reject the argument. Well-established rules of statutory construction direct us to "look to [a] statute's

9

entire substance in order to determine its scope and purposes," and not to consider statutory language in isolation. (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1107.) "We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole." (*Ibid.*) Another canon "generally preclude[s] judicial construction that renders part of the statute 'meaningless or inoperative.' " (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715–716 (*Hassan*).) With these tenets in mind, we cannot agree that an office expressly categorized as a discretionary voter registration agency must nonetheless be designated a voter registration agency if it meets the criteria of Section 20506(a)(2)(B). Such a conclusion disregards the express discretionary designations established in Section 20506(a)(3)(B) and would render them meaningless. The statutory language, read as whole, evinces no such legislative intent.

### 2.    Area Agencies on Aging

Appellants also argue the trial court incorrectly concluded the Secretary had no obligation to designate the state's Area Agencies on Aging (AAAs) as mandatory voter registration agencies. Again, we disagree.

The federal Older Americans Act of 1965 provides funding to states to support state programs that assist the elderly. (42 U.S.C. §§ 3001 et seq., 3021; see *Ombudsman Services of Northern California v. Superior Court* (2007) 154 Cal.App.4th 1233, 1242, disapproved on other grounds as stated in *Williams v. Superior Court* (2017) 3 Cal.5th 532, 557, fn. 8.) To access such funding, the Older Americans Act requires a state's department of aging to divide the state into planning and service areas, develop a formula for distribution of federal funds to them, and prepare and submit a state plan to the federal agency administering the program. (42 U.S.C. § 3025(a)(1)(A),(E),

(a)(2)(C).)  For each planning and service area, the state's department of aging must designate an AAA.  (*Id.* § 3025(a)(2)(A).)  An AAA can be an office or agency of a local government, a combination of local government agencies, or a "nonprofit private agency."  (*Id.* § 3025(c); Welf. & Inst. Code, § 9006 [AAA "means a private nonprofit or public agency designated by the [Department of Aging] that works for the interests of older Californians within a planning and service area"].)  Each AAA is responsible for developing an area plan describing the programs the AAA proposes to support with the funding and for "carry[ing]out, directly or through contractual or other arrangements, a program in accordance with the plan." (42 U.S.C. §§ 3025(c), 3026.)

The Older Americans Act authorizes distribution of funds to the state's department on aging for several categories of services, which include home delivered meal services.  (45 C.F.R. § 1321.63(a).)  The state's department on aging awards these funds to AAAs.  (*Id.* § 1321.63(b).)  In turn, AAAs "shall award these funds by grant or contract to community services provider agencies and organizations" unless a waiver is granted.  (*Ibid.*)

In light of the statutory and regulatory scheme governing AAAs and the record before us, we also cannot conclude the Secretary had a ministerial duty to categorically designate the state's AAAs as voter registration agencies.  Pursuant to the Older Americans Act, California is divided into 33 planning and service areas, each managed by an AAA.  Both the federal statute and relevant state statute make clear these AAAs need not be public offices.  (42 U.S.C. § 3025(c); Welf. & Inst. Code, § 9006.)  According to the Department of Aging's current Plan on Aging included in the record, not all are:  19 AAAs in the state are county government agencies, seven operate pursuant to "joint powers agreements," five are private non-profit

11

organizations, one is a city government agency, and one is a university foundation. Under the NVRA, nongovernmental offices are considered discretionary voter registration agencies, and only effective with the agreement of such offices. (52 U.S.C. § 20506(a)(3)(B)(ii); *Hammons*, *supra*, 202 F.3d at p. 120 ["[i]f the NVRA merely 'encourages' nongovernmental cooperation with agency-based registration, it cannot be said that such offices must be designated as mandatory [voter registration agencies]"].) Since at least five AAAs are nonprofits and thus nongovernmental entities, we cannot conclude the Secretary had an obligation to categorically designate the state's AAAs mandatory voter registration agencies.

Even for the remaining AAAs—which include county and city public offices, entities operated under a "joint powers agreement," and a university foundation—we cannot conclude Appellants were entitled to mandamus relief. Appellants sought to compel the Secretary's designation of these AAAs based on their roles in the state's Elderly Nutrition Program, which seeks to provide the nutrition services described in the Older Americans Act and "to assist older individuals in California to live independently, by promoting better health through improved nutrition, and reduced isolation through programs coordinated with nutrition-related supportive services." (Cal. Code Regs., tit. 22, § 7632.1.)

The regulatory framework for the state's Elderly Nutrition Program places responsibility for the program's administration with the Department of Aging. (Cal. Code Regs., tit. 22, § 7632.5.) It directs AAAs to "ensure the provision of nutrition services . . . through a provider as defined in subsection 7630(m)." (*Id.* § 7634.1.) "Provider" is defined as "an entity providing nutrition services. The provider may either be an AAA providing nutrition

12

services directly with Department [of Aging] approval . . . or an entity under contract with an AAA to provide nutrition services." (*Id.* § 7630(m).)

The regulatory section entitled "Selection of an Elderly Nutrition Program Provider" states the "AAA shall award a nutrition services contract to providers to furnish congregate and/or home-delivered meals through a competitive bid process." (Cal. Code Regs., tit. 22, § 7634.5(a).) This section contemplates that such contracts may be awarded to for profit providers, provided the AAA receives approval from the Department of Aging before doing so. (*Id.* § 7634.5(b).) It also recognizes that the AAA may "provid[e] direct nutrition services" as long as it meets certain requirements. (*Id.* at § 7634.5(c).)

Appellants contend that because AAAs provide the home delivered meals nutrition program, they are offices that provide State-funded programs which provide services to persons with disabilities within the meaning of Section 20506(a)(2)(B).) The regulatory framework for the Early Nutrition Program, however, makes clear that this may not always be the case. Under this framework, services under the Elderly Nutrition Program may be provided directly by the AAA when the Department of Aging approves. More commonly, however, the regulations contemplate these services will be furnished by an outside provider under contract with the AAA. The outside provider may be a nonprofit entity or a for profit provider.

Appellants cite nothing in the record that indicates any of the state's AAAs provide direct services under the Elderly Nutrition Program. Indeed, they cite no part of the record containing information as to how any of the AAAs deliver their nutrition services to elderly Californians. There is no information indicating that any AAA is a direct service provider of nutrition services, or whether such services are provided by an entity under contract

13

with the AAA.  For those that may be providers pursuant to contract, there is no information on whether the entity is a nongovernmental organization or for-profit entity, neither of which would be subject to mandatory designations.  (See 52 U.S.C. § 20506(a)(3)(B)(ii); *Hammons*, *supra*, 202 F.3d at p. 120.)  Without such information, we cannot categorically conclude any of the remaining AAAs were subject to the NVRA's mandatory designation.

Even so, Appellants contend that AAAs nonetheless provide the services within the meaning of Section 20506(a)(3)(B) that compel their mandatory designation as voter registration agencies.  According to Appellants, the AAAs "determine what programs they will offer to constituents of an area plan, including home-delivered meals" and they "receive and distribute" funds to these programs.  In their view, these acts are sufficient to satisfy the requirements of Section 20506(a)(2)(B) and mandate designation.  We disagree.

Appellants cite no authority for the proposition that determining what programs will be offered constitutes "provid[ing] State-funded programs" primarily engaged in providing services to persons with disabilities.  Nor do they cite any authority for the proposition that mere administrative or financial support can constitute "programs primarily engaged in providing services to persons with disabilities."

Further, such views are inconsistent with the legislative intent behind the agency designation provisions of the NVRA.  As noted, the statute's purpose was to establish procedures to increase the number of eligible citizens who register to vote.  (52 U.S.C. § 20501(b).)  The court in *National Coalition for Students with Disabilities Education and Legal Defense Fund v. Allen* (4th Cir. 1998) 152 F.3d 283, explained, "The centerpiece of the Act is the motor voter section, providing for the simultaneous application for a

driver's license and voter registration. [Citation.] But Congress recognized that many citizens do not drive. To accommodate the non-drivers among us and to provide greater opportunity for registration in general, Congress requires states to designate a number of offices . . . as voter registration agencies." (*Id.* at p. 292.) According to the House Report, "the office designation section . . . [was] designed to 'supplement the motor-voter provisions . . . by reaching out to those citizens who are likely not to benefit from the State motor-voter application provisions.' " (*Ibid.*) By requiring states to designate offices serving the disabled as voter registration agencies, Congress was " 'assured that almost all of our citizens will *come into contact with an office at which they may apply to register to vote* with the same convenience as will be available to most other people under the motor voter program.' " (*Ibid.*, emphasis added.) Neither an AAA's determination of what programs will be offered, nor its funding of such programs, involve the type of direct contact between a state office and a constituent contemplated by the legislature to merit a designation. Such distant connections to the actual provision of services to disabled persons cannot be the basis for mandatory designation.

Appellants further argue that the NVRA "clearly requires 'all offices'—whether public or private—that provide state-funded programs serving people with disabilities to be designated as Voter Registration Agencies." Such a construction, however, would disregard the express discretionary designations established for "nongovernmental offices" in Section 20506(a)(3)(B) and render them meaningless. (*Hassan, supra*, 31 Cal.4th at pp. 715–716.)

Lastly, Appellants assert that the use of private contractors by AAAs

15

nonetheless subjects them to mandatory designation because state law defines a voter registration agency to include "[a] private entity under contract with a designated voter registration agency to provide services or assistance on behalf of the designated voter registration agency." (See Elec. Code, § 2401, subd. (b)(2).) We disagree. This provision applies when the office with which the private entity has contracted is already a designated voter registration agency. No showing has made that any of the AAAs have been so designated.

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

_____

Wiseman, J.[*]



WE CONCUR:




_____

Petrou, Acting P.J.




_____

Jackson, J.










*Senior and Disability Action et al. v. Weber*, A159540




_____

    [*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

Trial Court:

Superior Court of the City and County of San Francisco

Trial Judge:

Hon. Ethan P. Schulman

Counsel for Plaintiffs and Appellants:

Shilpi Agarwal, Anne Decker, Amy Gilbert, American Civil Liberties Union Foundation of Northern California

Frederick P. Nisen, Paul R. Spencer, Ben Conway, Navneet K. Grewal, Disability Rights California

Counsel for Defendant and Respondent:

Xavier Becerra, Attorney General

Thomas S. Patterson, Senior Assistant Attorney General

Paul Stein, Supervising Deputy Attorney General

Anna Ferrari, Deputy Attorney General

*Senior and Disability Action et al. v. Weber*, A159540